Filed 5/9/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B283427 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. A990468) |
| v. | |
| AKINTUNDE HAKEEM OGUNMOWO, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Michael D. Abzug, Judge. Reversed and remanded with directions.

Mark A. Davis for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews and Rene Judkiewicz, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Akintunde Hakeem Ogunmowo appeals from an order denying his motion to vacate his 1989 conviction for possession for sale of a controlled substance. He brought this motion under Penal Code section 1473.7,[1] arguing his conviction was legally invalid because his trial counsel incorrectly advised him about the immigration consequences of his guilty plea and he was prejudiced as a result. We conclude Ogunmowo made a sufficient showing that his counsel rendered ineffective assistance in misadvising him about the immigration consequences of his guilty plea, and he was prejudiced by counsel's deficient performance. We reverse the trial court's order denying the motion to vacate the conviction and remand the matter to the trial court to allow Ogunmowo to withdraw his guilty plea.

## BACKGROUND

In 1980, when Ogunmowo was 17 years old, he left Nigeria and came to the United States. He became a lawful permanent resident of the United States in 1988. In June 1989, he was arrested and charged with sale or transportation of a controlled substance (Health & Saf. Code, § 11352; count 1), possession for sale of a controlled substance (Health and Saf. Code, § 11351; count 2), and two counts of conspiracy (§ 182; counts 3 & 4).

**1989 Guilty Plea**

Attorney Jerry Kaplan represented Ogunmowo on the drug charges. As set forth in Kaplan's affidavit submitted with the section 1473.7 motion to vacate the conviction, he advised Ogunmowo to plead guilty to count 2 (possession for sale of a

---

[1] Statutory references are to the Penal Code unless otherwise noted.

2

controlled substance [cocaine]) in exchange for a negotiated two-year prison term.

According to his affidavit, Kaplan had a "good recollection" of Ogunmowo's criminal case, based on his review of the file (at the time he made his affidavit) and "the unique circumstances involved in [the] case." In 1989, when he represented Ogunmowo, Kaplan was aware Ogunmowo was a Nigerian native who had recently received his "green card." Ogunmowo expressed to Kaplan his concern regarding the effect of a conviction on his immigration status. In 1989, Kaplan understood that "immigration issues were considered collateral to any criminal court representation." Thus, Kaplan believed he "had no obligation to investigate" this collateral consequence of the plea. Accordingly, he did not investigate, inform himself about or seek to protect Ogunmowo from any immigration consequences of the plea. Nonetheless—as stated in his own words in his affidavit—he "advised Mr. Ogunmowo that because he was a lawful permanent resident of the United States, that he would not face any immigration consequences because of his plea in this case." As Kaplan acknowledges, his advice "was wrong," as we explain in more detail below.

Following his attorney's advice, on August 7, 1989, Ogunmowo pleaded guilty to count 2, and the trial court sentenced him to the low-term of two years in prison. During the plea proceedings, the trial court informed Ogunmowo about "possible effects of [the] plea on any alien/citizenship/probation/parole status."[2] In his declaration

---

[2] Neither the minute order nor the reporter's transcript from the August 7, 1989 plea hearing is part of the record before

3

submitted in connection with the motion to vacate his conviction under section 1473.7, Ogunmowo stated he had "no recollection" that the trial court advised him about the immigration consequences of his guilty plea.

**Prior Attempts to Vacate Conviction**

### 1990 petition for writ of *coram nobis*

Attorney Kaplan explained in his affidavit submitted in connection with the section 1473.7 motion to vacate the conviction that, in January 1990, he filed a petition for writ of *coram nobis* on behalf of Ogunmowo. He alleged in the petition that a sheriff's deputy involved in Ogunmowo's drug case "made materially false statements and allegations in his preliminary hearing testimony which were central to [Kaplan's] recommendation that Mr. Ogunmowo [plead guilty] in this case." According to Kaplan's affidavit, "Shortly after Mr. Ogunmowo's plea and conviction, [the deputy] was caught up in a corruption scandal and charged in federal court with numerous crimes of moral turpitude involving alleged 'suspects.' "[3] The trial court denied Ogunmowo's *coram nobis* petition.

---

us. Nor are these documents included in the copy of the file we requested and received from the superior court. As set forth more fully below, in connection with earlier motions to vacate his conviction that Ogunmowo brought in 2009 and 2014, the trial court made findings that the minute order from the date of the plea reflects the court made an advisement about possible immigration consequences of the plea.

[3] As also set forth in Kaplan's affidavit, in 1993, the federal district court sentenced the deputy to 16 years in prison "for stealing money seized in drug investigations, conspiracy to commit perjury, tax evasion, aiding and abetting perjury, submitting false documents on a loan application, and attempting

4

**2009 motion to vacate conviction**

After his 1989 conviction, Ogunmowo continued to live in the United States.  Between 1994 and 2002, he and his romantic partner (a U.S. citizen) had four children together, all born in Los Angeles.

In or about March 2004, the United States Department of Justice Immigration and Naturalization Service instituted removal proceedings against Ogunmowo under section 240 of the Immigration and Nationality Act (8 U.S.C. § 1229a), citing his 1989 conviction as the basis for removal.

On January 13, 2009, Ogunmowo filed a motion to vacate his 1989 conviction based on the immigration consequences of his plea (the ongoing deportation proceedings).[4]  The trial court denied the motion, stating in its minute order:  "Defendant has waited almost 20 years to bring this motion.  Defendant is now complaining of the collateral consequences of his plea due to his present deportation proceedings.  Defendant has not shown mistake, inadvertence, ignorance or any other factor overreaching the defendant's clear and fair judgment on the date the plea was entered.  The court docket from the date of the plea indicates that

to possess and distribute 66 pounds of cocaine for $6 million profit."  In connection with his section 1473.7 motion, Ogunmowo submitted newspaper articles detailing the corruption scandal as a whole and this particular deputy's criminal case and resulting prison sentence.

[4] The motion is not included in the record on appeal or the superior court file we received (nor is the 2014 motion for reconsideration we discuss below), so the specific grounds on which Ogunmowo sought vacation of the conviction are unclear. The minute order denying the motion is part of the record.

defendant was in fact told of the alien, citizenship and immigration consequences of the plea entered."

**2014 motion for reconsideration of 2009 order denying motion to vacate conviction**

In September 2012, the immigration court sent Ogunmowo notice of an April 2013 hearing scheduled in his removal proceedings.[5]

On March 10, 2014, Ogunmowo filed a motion for reconsideration of the order denying his January 13, 2009 motion to vacate his conviction. On September 26, 2014, the trial court denied the motion, "not[ing] that the minute order from the date of the plea, August 7, 1989, specifically states, 'defendant advised of possible effects of plea on any alien/citizenship/probation/parole status.'" Based on this quoted language, the court made a finding that "the defendant received an advisement that substantially complied with section 1016.5,"[6] as set forth in the September 26, 2014 minute order.

_____

[5] It is not clear from the record what occurred in Ogunmowo's removal proceedings between 2004 and 2012. He stated in his declaration that the immigration agency "[a]t one point . . . administratively closed [his] file," but the case was reopened prior to the time he filed the present motion to vacate his conviction.

[6] Section 1016.5, subdivision (a) provides: "Prior to acceptance of a plea of guilty or nolo contendere to any offense punishable as a crime under state law, except offenses designated as infractions under state law, the court shall administer the following advisement on the record to the defendant: [¶] If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the

6

**Present Section 1473.7 Motion to Vacate Conviction**

On January 1, 2017, section 1473.7 became effective. This statute authorizes a "person no longer imprisoned or restrained" to "prosecute a motion to vacate a conviction or sentence" where the "conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) Thus, for the first time since Ogunmowo received notice of the removal proceedings initiated against him, he had a mechanism for challenging his conviction based on ineffective assistance of counsel.[7]

On March 3, 2017, Ogunmowo filed a motion to vacate his conviction under section 1473.7, arguing his conviction was legally invalid because his trial counsel incorrectly advised him about the immigration consequences of his guilty plea and he was prejudiced as a result. Ogunmowo's trial counsel, Jerry Kaplan, stated in his affidavit submitted with the motion that he "recall[ed] Mr. Ogunmowo being concerned about what would happen to his immigration status if he was convicted in this case." As discussed above, Kaplan admitted in the affidavit that although he did not investigate, inform himself about or seek to protect Ogunmowo from any immigration consequences of the

---

United States, or denial of naturalization pursuant to the laws of the United States."

[7] Ogunmowo could not bring an ineffective assistance of counsel claim in a petition for writ of habeas corpus after the removal proceedings commenced in 2004 because he was no longer imprisoned or restrained.

7

plea—because he understood he "had no obligation to investigate" this collateral consequence of the plea—he nonetheless "advised Mr. Ogunmowo that because he was a lawful permanent resident of the United States, that he would not face any immigration consequences because of his plea in this case." As Kaplan further conceded in the affidavit, his advice "was wrong." As set forth in the 2004 notice of removal proceedings against Ogunmowo, an alien[8] convicted of violating a law relating to a controlled substance was ineligible for a visa and ineligible for admission to the United States. (8 U.S.C. § 1182(a)(2)(A)(i)(II).) Being deemed inadmissible rendered an alien subject to removal. Thus, Ogunmowo's conviction made him subject to removal from the United States.

In his declaration in support of the motion, Ogunmowo stated: "I would have rejected the plea agreement had I known I could be subject to immigration sanctions. I moved my life 7,700 miles across the globe from Lagos, Nigeria to Los Angeles in 1980. I became a lawful permanent resident in 1988. I was not about to accept the possibility of deportation or inability to maintain my immigration status to be in the United States. I had already established my life in the United States." He also stated: "Important to me was the fact that my attorney told me I would not face any immigration consequences because of my status as a lawful permanent resident of the United States. I relied upon this incorrect information in deciding to plead guilty in this case." Ogunmowo asserted he "would have opted to go to

---

[8] "The term 'alien' means any person not a citizen or national of the United States," including a lawful permanent resident. (8 U.S.C. § 1101(a)(3).)

8

trial if [he] knew that [his] decision to plead guilty would mean automatic deportation and no chance at ever being a U.S. citizen."

The Los Angeles District Attorney did not file an opposition to the motion. A deputy district attorney appeared at the June 9, 2017 hearing and submitted, without argument, on the trial court's written tentative ruling denying the motion.

At the hearing, the trial court acknowledged the "law has changed," and therefore the court did not "fault [Ogunmowo] for waiting until now to try to withdraw his plea." The court adopted its tentative ruling, entitled "Findings of Fact and Conclusions of Law," in which it concluded Ogunmowo did not make a sufficient showing that he was prejudiced by his attorney's incorrect advice regarding the immigration consequences of his guilty plea.

The trial court's written ruling states, in pertinent part: "[T]he Court finds that the attorney's alleged opinion about the immigration consequences of the defendant's plea, which Mr. Kaplan acknowledges he did not research or otherwise verify, played no part in the defendant's decision to accept the plea negotiated on his behalf.

"In this regard, the Court notes the absence of any credible discussion in the moving papers about the materiality of advice that Mr. Kaplan may have given to the defendant. The moving party has not addressed the potential consequences of rejecting the negotiated offer because of its collateral immigration consequences. The absence of any such disclosure, either by Mr. Kaplan or the defendant, leads to the reasonable assumption that the immigration consequences was [*sic*] not a factor in accepting the plea. This finding is punctuated by Mr. Kaplan's admission that he does not practice in the field of immigration law and

9

made no effort to determine whether his advice was correct, an oversight which undoubtedly would have been corrected by any competent counsel if, indeed, his advice had any material bearing on the defendant's decision to plead. [Citation.]

"Without passing upon Mr. Kaplan's contention that he 'had no obligation to investigate any collateral consequences of this disposition,' he certainly had an obligation, if his client asked about the immigration consequences of the plea, to refer him to a reliable source or advise him in a competent manner. Mr. Kaplan['s] emphasis that he 'did not investigate, inform about, or protect against any potential immigration fall out of the plea,' compels a conclusion that the advice was not important to his client in deciding whether to accept the disposition. Likewise, Mr. Kaplan's apparent silence when the Court advised his client of the immigration consequences of the plea that was directly contrary to his alleged advice is strong circumstan[tial] evidence that the advice was never given or, more probably, that the immigration consequences did not influence the defendant's . . . decision to plead."

The trial court concluded Ogunmowo made an insufficient showing of prejudice under the applicable standard. Therefore, the court denied his section 1473.7 motion to vacate his conviction.

## DISCUSSION

Ogunmowo contends the trial court erred in denying his section 1473.7 motion to vacate his conviction because he made a sufficient showing (1) that trial counsel's performance was deficient and (2) that he was prejudiced by the deficiency. We agree.

10

As set forth above, section 1473.7 authorizes a "person no longer imprisoned or restrained" to "prosecute a motion to vacate a conviction or sentence" where the "conviction or sentence is legally invalid due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) "The court shall grant the motion to vacate the conviction or sentence if the moving party establishes, by a preponderance of the evidence, the existence of any of the grounds for relief specified in subdivision (a)." (§ 1473.7, subd. (e)(1).)

The motion "shall be filed with reasonable diligence after the later of the following: [¶] (1) The date the moving party receives a notice to appear in immigration court or other notice from immigration authorities that asserts the conviction or sentence as a basis for removal. [¶] (2) The date a removal order against the moving party, based on the existence of the conviction or sentence, becomes final." (§ 1473.7, subd. (b).) Ogunmowo filed his motion two months after the effective date of section 1473.7 and before the finality of any removal order. Thus, his motion was timely.[9]

Ineffective assistance of counsel that damages a defendant's ability to meaningfully understand, defend against,

_____

[9] In this case, the Attorney General does not dispute the retroactivity of section 1473.7. (Cf. *People v. Perez* (2018) 19 Cal.App.5th 818, 824-829 [in ruling on a section 1473.7 motion, the Court of Appeal rejected the Attorney General's argument that the statute did not apply retroactively to a defendant who pleaded guilty before the statute's effective date].)

11

or knowingly accept the actual or potential adverse immigration consequences of a guilty plea, if established by a preponderance of the evidence, is the type of error that entitles the defendant to relief under section 1473.7. (*People v. Landaverde* (2018) 20 Cal.App.5th 287, 290 [affirming trial court's denial of motion to vacate under section 1473.7 based on conclusions appellant did not establish deficient performance or prejudice where his trial counsel failed to advise him about the immigration consequences of the plea].) To establish ineffective assistance of counsel, a defendant must demonstrate that his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and that he was prejudiced by the deficient performance. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688, 691-692; *People v. Williams* (1997) 16 Cal.4th 153, 215.)

**Standard of Review**

There is no published decision addressing the applicable standard of review of an order denying a motion to vacate a conviction under section 1473.7. Both Ogunmowo and the Attorney General assert the applicable standard of review is abuse of discretion. In support of his position, the Attorney General cites decisions applying the abuse of discretion standard to review of orders granting and denying motions to vacate convictions under section 1016.5 (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192; *People v. Chien* (2008) 159 Cal.App.4th 1283, 1287) and denying withdrawal of a guilty plea under section 1018 (*People v. Patterson* (2017) 2 Cal.5th 885, 894). Because Ogunmowo is claiming violation of a *constitutional* right (the right to effective assistance of counsel), not a *statutory* violation, we find these cases and the abuse of discretion standard inapplicable, as explained more fully below.

12

De novo review is the appropriate standard for a mixed question of fact and law that implicates a defendant's constitutional right. (*People v. Cromer* (2001) 24 Cal.4th 889, 899-902.) A defendant's claim that he or she was deprived of the constitutional right to effective assistance of counsel "presents a mixed question of fact and law," and we accordingly review such question independently. (*In re Resendiz* (2001) 25 Cal.4th 230, 248, abrogated in part on other grounds in *Padilla v. Kentucky* (2010) 559 U.S. 356, 370.) We accord deference to the trial court's factual determinations if supported by substantial evidence in the record, but exercise our independent judgment in deciding whether the facts demonstrate trial counsel's deficient performance and resulting prejudice to the defendant. (*In re Resendiz*, *supra*, 25 Cal.4th at p. 249; *People v. Taylor* (1984) 162 Cal.App.3d 720, 724-725, citing *People v. Leyba* (1981) 29 Cal.3d 591, 596-597 [explaining the standard for reviewing on appeal an ineffective assistance of counsel claim made in a motion for new trial].) We apply this standard in reviewing the trial court's order denying Ogunmowo's motion to vacate his conviction under section 1473.7, in which he argued his conviction was legally invalid because his trial counsel rendered ineffective assistance by incorrectly advising him about the immigration consequences of his guilty plea, and he was prejudiced as a result.

**Trial Counsel's Deficient Performance**

Ogunmowo's declaration and Kaplan's affidavit, submitted with the section 1473.7 motion to vacate the conviction, establish: Before he entered his guilty plea, Ogunmowo expressed to attorney Kaplan his concerns about the immigration consequences of a guilty plea. Kaplan was aware Ogunmowo was a Nigerian native who had recently received his "green card."

13

Kaplan believed he had no obligation to research or investigate the immigration consequences of the plea because immigration issues were "collateral" consequences of the plea. Therefore, Kaplan did not investigate, inform himself about or seek to protect Ogunmowo from any immigration consequences of the plea. Notwithstanding his lack of research and investigation, Kaplan informed Ogunmowo unequivocally that he would *not* face any immigration consequences as a result of the guilty plea because he was a lawful permanent resident of the United States. This information was incorrect, and as Kaplan now acknowledges, he misadvised his client about the immigration consequences of the guilty plea. As set forth in sections 7342-7344 of the Anti-Drug Abuse Act of 1988 (102 Stat. 4469-4471), an alien convicted of an aggravated felony, including a drug trafficking offense, was subject to mandatory removal from the United States. Thus, the law was clear at the time Ogunmowo entered his guilty plea that a conviction for possession for sale of a controlled substance rendered him subject to removal.

We need not discuss whether a trial attorney in 1989 had an affirmative obligation to advise his client of the immigration consequences of a guilty plea under California law. (*Padilla v. Kentucky*, *supra*, 559 U.S. at p. 374 [announcing that the Sixth Amendment requires trial counsel to advise a criminal defendant about the risk of deportation arising from a guilty plea]; *Chaidez v. U.S.* (2013) 568 U.S. 342, 344, 350 [holding that the rule announced in *Padilla* was not retroactive, but noting that prior to *Padilla*, state courts were required to resolve the issue for themselves].) This is not a case where trial counsel remained silent and failed to discuss immigration consequences with his client at all. Here, Ogunmowo raised his immigration concerns

14

with Kaplan, and in return, Kaplan gave him incorrect advice without researching or investigating the issue. Affirmatively misadvising a client that he will not face immigration consequences as a result of a guilty plea in a drug trafficking case—when the law states otherwise—is objectively deficient performance under prevailing professional norms.

We also note that at the time Kaplan represented Ogunmowo, "The American Bar Association's Standards for Criminal Justice, standard 14-3.2, which discusses plea agreements, provide[d], in pertinent part, that '(b) To aid the defendant in reaching a decision, defense counsel, after appropriate investigation, should advise the defendant of the alternatives available and of considerations deemed important by defense counsel or the defendant in reaching a decision.' (3 ABA Standards for Criminal Justice, std. 14-3.2 (2d ed. 1980) p. 73.) The commentary to the standard note[d] the importance of advising a client of collateral consequences which may follow his conviction. '[W]here the defendant raises a specific question concerning collateral consequences (as where the defendant inquires about the possibility of deportation), counsel should fully advise the defendant of these consequences.' [Citation.]" (*People v. Soriano* (1987) 194 Cal.App.3d 1470, 1481.)

**Prejudice**

To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Strickland v. Washington, supra*, 466 U.S. at p. 694.) "[W]hen a defendant claims that his counsel's deficient performance deprived him of a trial by causing

15

him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.' " (*Lee v. U.S.* (2017) ___ U.S. ___, 137 S.Ct. 1958, 1965.)  The probability of obtaining a more favorable result at trial is one factor to consider in evaluating prejudice, but it is not necessarily the determinative factor.  (*People v. Martinez* (2013) 57 Cal.4th 555, 559.)  As the United States Supreme Court recently explained in *Lee v. U.S.*, *supra*, 137 S.Ct. 1958, it could be reasonably probable that a defendant "would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial," where "avoiding deportation was *the* determinative factor for [the defendant]." (*Id*. at p. 1967.)  "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies.  Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."  (*Ibid*.)

In his declaration, Ogunmowo stated he relied on Kaplan's incorrect advice that he would not face any immigration consequences as a result of his guilty plea and would not have pleaded guilty if Kaplan had correctly advised him.  He asserted he "would have opted to go to trial if [he] knew that [his] decision to plead guilty would mean automatic deportation and no chance at ever being a U.S. citizen."  He had "moved [his] life 7,700 miles across the globe" nearly a decade before, and "was not about to accept the possibility of deportation or inability to maintain [his] immigration status to be in the United States."

Kaplan's affidavit demonstrates Ogunmowo sought his advice about the immigration consequences of a guilty plea.

16

Ogunmowo explained his immigration status to Kaplan and expressed concern regarding the effect of a conviction on his immigration status. This contemporaneous evidence—Kaplan's account of discussions that occurred at the time of the guilty plea—supports Ogunmowo's assertion he would have rejected the plea deal if his attorney had not misadvised him about the immigration consequences of a conviction. His immigration status was such an important factor to him that he affirmatively sought his attorney's counsel about immigration consequences before entering his guilty plea.

Although neither Ogunmowo's declaration nor Kaplan's affidavit flushed out the likelihood of success at trial or set forth Ogunmowo's exposure if he went to trial and was convicted on all charges,[10] we conclude Ogunmowo nonetheless established

---

[10] It appears from the information, filed July 19, 1988, that Ogunmowo's maximum exposure was 11 years in prison: a high term of five years for sale or transportation of a controlled substance (Health & Saf. Code, § 11352; count 1), a term of five years for the enhancement that the cocaine in count 1 exceeded 10 pounds by weight within the meaning of former Health and Safety Code section 11370.4, subdivision (a), and one year (one-third the midterm) for possession for sale of a controlled substance (Health and Saf. Code, § 11351; count 2). Based on our review of the June 22, 1989 felony complaint and the information, punishment for convictions on the conspiracy charges (counts 3 & 4) probably would have been stayed under section 654. The information also included a count for attempted possession for sale of a controlled substance (count 5) and attempted sale or transportation of a controlled substance (count 6). Because the attempt counts are based upon an attempt to complete the crimes alleged in counts 1 and 2, there could be no conviction for both the attempt crimes and the completed crimes. (See *In re*

prejudice without these factors. His declaration makes clear that he wanted to avoid deportation at all costs, such that he would have rejected a scenario of automatic deportation—pleading guilty to a drug trafficking offense—in favor of a scenario of possible deportation—defending his case at trial, regardless of the other potential consequences (a longer prison sentence). Like the defendant in *Lee v. U.S.*, *supra*, 137 S.Ct. at page 1967, "deportation was *the* determinative factor for him; deportation after some time in prison was not meaningfully different from deportation after somewhat less time." His priority was remaining in the United States.

The trial court's "conclusion that [Kaplan's] advice was not important to [Ogunmowo] in deciding whether to accept the disposition" is not entitled to our deference under the applicable independent standard of review for two reasons. First, the trial court's conclusion was drawn from statements in Ogunmowo's declaration and Kaplan's affidavit. The trial court and this court are in the same position in interpreting written declarations. If the trial court had heard live testimony, instead of reading written declarations, its credibility determinations would be entitled to deference if supported by the record. (*In re Resendiz*, *supra*, 25 Cal.4th at p. 249.) Second, the conclusion is not supported by the record or case law.

In concluding Ogunmowo was not prejudiced by his counsel's incorrect advice, the trial court hearing this motion emphasized that the court that took the plea warned Ogunmowo

---

*Sylvester C.* (2006) 137 Cal.App.4th 601, 610, fn. 18.) On the court's own motion we take judicial notice of the June 22, 1989 felony complaint and the July 19, 1989 information we received from the superior court as part of the file we requested.

18

about immigration consequences.  The fact that the court advised Ogunmowo that immigration consequences arising from the guilty plea were *possible* does not preclude Ogunmowo from establishing that counsel's incorrect advice prejudiced him. Under California law, a "defendant can pursue a claim for relief for ineffective assistance of counsel, based on counsel's misadvice regarding immigration consequences, notwithstanding that the trial court had properly advised the defendant under section 1016.5." (*People v. Aguilar* (2014) 227 Cal.App.4th 60, 72, citing *In re Resendiz*, *supra*, 25 Cal.4th at pp. 240-242.)  "[T]hat a defendant may have received valid section 1016.5 advisements from the court does not entail that he has received effective assistance of counsel in evaluating or responding to such advisements." (*In re Resendiz*, *supra*, at p. 241.)  When Ogunmowo expressed concern about the immigration consequences of a guilty plea, Kaplan told him he would not face immigration consequences if he pleaded guilty because he was a lawful permanent resident of the United States.  Ogunmowo reasonably relied on Kaplan's advice—which was unequivocal and tailored to the specific facts of Ogunmowo's particular immigration status—over the trial court's standard warning that deportation might be a possible consequence of a guilty plea for someone who is a noncitizen.  Moreover, the court's warning, given just before the plea is taken, does not afford the same time for " 'mature reflection' " as a private discussion with a defendant's own counsel that incorporates the particular circumstances of the defendant's case. (*People v. Soriano, supra*, 194 Cal.App.3d at pp. 1479, 1481 [granting petition for writ of habeas corpus and vacating judgment based on finding that the defendant was deprived of the effective assistance of counsel in

19

entering his guilty plea where his counsel responded to his inquiry about immigration consequences by either misadvising him that he would not face deportation (the defendant's version) or providing a pro forma response that his plea might have immigration consequences without conducting any investigation (trial counsel's version)].)

The trial court similarly questioned the credibility of Kaplan's affidavit because Kaplan apparently remained silent when the court that took the plea gave the warning about possible immigration consequences. The trial court concluded Kaplan's silence "was strong circumstan[tial] evidence that" either he never advised Ogunmowo about immigration consequences or "more probably, that the immigration consequences did not influence the defendant's . . . decision to plead." We disagree with the trial court's conclusion. Kaplan explained in his affidavit that he believed Ogunmowo would not face adverse immigration consequences as a result of his guilty plea because of his status as a lawful permanent resident of the United States. And he so advised Ogunmowo. It is not surprising Kaplan remained silent when the court that took the plea gave the standard warning that a noncitizen might face possible immigration consequences. The court was not addressing Ogunmowo's particular status as a lawful permanent resident.

Taken together, Ogunmowo's declaration and Kaplan's affidavit demonstrate a reasonable probability Ogunmowo would not have pleaded guilty if Kaplan had not misadvised him. Accordingly, Ogunmowo established prejudice.

The trial court erred in denying Ogunmowo's section 1473.7 motion to vacate his conviction. Ogunmowo met his burden of

20

establishing by a preponderance of the evidence (1) that Kaplan's performance was deficient in misadvising him about the immigration consequences of his guilty plea and (2) that Kaplan's incorrect advice prejudiced him in that there is a reasonable probability he would not have pleaded guilty if properly advised. The trial court's conclusions to the contrary are not supported by the record. Accordingly, we reverse the order and remand the matter to the trial court to allow Ogunmowo to withdraw his guilty plea.

## DISPOSITION

The order is reversed and the matter is remanded to the trial court to allow Ogunmowo to withdraw his guilty plea.

CERTIFIED FOR PUBLICATION

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

JOHNSON, J.

21