Filed 12/15/20; Modified and Certified for Publication 1/11/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EUN SUNG JUNG,<br><br>    Defendant and Appellant. | G057958, G057959<br><br> (Super. Ct. Nos. 14NF4348,<br>  15NF0802)<br><br>O P I N I O N |

        Appeal from an order of the Superior Court of Orange County, Elizabeth G. Macias, Judge.  Reversed and remanded with directions.

        Law Offices of Lori B. Schoenberg and Lori B. Schoenberg for Defendant and Appellant.

        Xavier Becerra, Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Adrian R. Contreras, Deputy Attorneys General, for Plaintiff and Respondent.

*        *        *

# INTRODUCTION

Eun Sung Jung appeals from an order denying her two motions to vacate plea and conviction pursuant to Penal Code section 1473.7 (section 1473.7).[1]  She argues the trial court erred by denying the motions because she had met her burden of proving prejudicial error that damaged her ability to meaningfully understand the adverse immigration consequences of her guilty pleas.

Jung is entitled to relief under section 1473.7.  We follow *People v. Mejia* (2019) 36 Cal.App.5th 859 (*Mejia*) and conclude a person's own error in not understanding or knowingly accepting that a guilty plea will have certain and adverse immigration consequences may constitute prejudicial error entitling the person to relief under section 1473.7.  *Mejia* was issued several months after the trial court denied Jung's motions and therefore the court did not have the benefit of that opinion when concluding such prejudicial error must have been committed by a third party.  In support of the section 1473.7 motions, Jung met her burden of proof by submitting her own declaration and a declaration from her then trial counsel showing that, at the time of the pleas, she did not meaningfully understand the adverse immigration consequences of pleading guilty and would not have pleaded guilty if she did.

Jung's earlier petitions for writ of habeas corpus, which alleged ineffective assistance of counsel, did not bar Jung from seeking relief under section 1473.7 once she was no longer in criminal custody.  The order and findings denying Jung's habeas corpus petitions have, we shall assume, collateral estoppel or issue preclusion effect as to any identical issue that was actually litigated and necessarily decided.  But the issues whether

---

[1]  Section 1473.7, subdivision (a)(1) reads:  "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence for either of the following reasons:  [¶] (1) The conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere.  A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."

2

Jung meaningfully understood or knowingly accepted the adverse immigration consequences of her plea and convictions, and whether she suffered prejudice, were not actually or necessarily determined in the habeas corpus proceedings: The trial court denied the petitions solely on the ground that counsel's performance was not deficient and expressly declined to reach the issue of prejudice.

Jung established by a preponderance of the evidence the existence of a ground for relief under section 1473.7, subdivision (a), and, therefore, the trial court erred by denying her motions for relief. (§ 1473.7, subd. (e)(1).) In accordance with *Mejia, supra,* 36 Cal.App.5th at page 872, we shall reverse with directions to the trial court to grant the motions.

## FACTS AND PROCEDURAL HISTORY

### I. The Guilty Pleas and Immigration Advisements

Jung was born in South Korea in 1994. In 1998, at the age of three, she was brought by her parents to the United States as a nonimmigrant visitor and has continuously lived in this country since then. She is not a United States citizen and does not have permanent resident status. In December 2012, United States Citizenship and Immigration Services approved Jung's application for Deferred Action for Childhood Arrivals, granted her employment authorization, and, for a period of two years, deferred action to remove her from the United States.

A felony complaint filed in October 2014 in Orange County Superior Court (case No. 14NF4348) charged Jung with one count each of second degree commercial burglary (Pen. Code, §§ 459, 460, subd. (b)), obtaining drugs by a forged prescription (Health & Saf. Code, § 11368), possession of a controlled substance (*id*., § 11377, subd. (a)), misdemeanor possession of controlled substance paraphernalia (*id*., § 11364.1, subd. (a)), and misdemeanor identity theft with intent to defraud (Pen. Code, § 530.5, subd. (c)(1)). A second felony complaint, filed in Orange County Superior Court in March

2015 (case No. 15NF0802), charged Jung with two counts of felony identity theft (Pen. Code, § 530.5, subd. (a)) and one count each of sale or transportation of a controlled substance (Health & Saf. Code, § 11379, subd. (a)), possession for sale of a controlled substance (*id*., § 11378), misdemeanor receiving stolen property (Pen. Code, § 496, subd. (a)), and misdemeanor possession of controlled substance paraphernalia (Health & Saf. Code, § 11364.1, subd. (a)).

Case Nos. 14NF4348 and 15NF0802 were resolved together in November 2015 by means of plea agreements. In each case, Jung pleaded guilty to all charges, and she and her counsel signed an advisement and waiver of rights for a felony guilty plea (the plea form).

The plea form in case No. 14NF4348 indicated a maximum total punishment of six years six months in prison; Jung agreed to a sentence of 180 days in jail and three years of supervised probation. As the factual basis for the plea, Jung offered these facts: "[O]n 10/12/14 I did unlawfully enter Walgreens, a commercial building, [with] the intent to commit larceny. I also did unlawfully forge a prescription bearing a forged [and] fictitious signature for a narcotic drug & then did possess that drug secured by the forged prescription. I also did unlawfully possess a usable quantity of methamphetamine, a controlled substance. I also did unlawfully possess a pipe used to smoke drugs. I also did [with] the intent to defraud retain possession of the personal identifying information of Chan P."

The plea form in case No. 15NF0802 indicated a maximum total punishment of five years four months; Jung agreed to a sentence of 180 days in jail and three years of probation. As the factual basis for the plea, Jung offered these facts: "[O]n 6/17/14, I unlawfully possessed and transported methamphetamine for sale. I also willfully and unlawfully obtained personal identifying information of Kimberly Park and Doug M. and attempted to use that information for an unlawful purpose. I also received

4

unlawfully a C[alifornia] driver's license and a check which had been stolen and possessed a pipe used for smoking a controlled substance."

On both plea forms, Jung initialed a provision, numbered paragraph 11, stating: "**Immigration consequences:** I understand if I am not a citizen of the United States, my conviction for the offense charged will have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." On both plea forms, Jung initialed and signed a representation that she had read, understood, and initialed each numbered item and had discussed them with her attorney. Her counsel signed a representation on both plea forms that he had explained to Jung each of the rights set forth on the forms and had discussed with her "the possible sentence ranges and immigration consequences."

At the change of plea hearing, the deputy district attorney asked Jung, "Do you understand that, if you are not a United States citizen, your plea in this case will result in you being deported, excluded from, and denied amnesty or naturalization in the United States?" Jung answered, "yes." The trial court accepted the pleas and found that Jung had knowingly and voluntarily waived her constitutional rights. She was sentenced to 180 days in jail, with 130 days of credit, in case No. 14NF4348 and received the same sentence, to run concurrently, in case No. 15NF0802.

## II. Jung's Petitions for Writ of Habeas Corpus

A. *The Writ Petitions*

In January 2016, Jung was released from jail and entered the custody of Immigration and Customs Enforcement (ICE). In May 2016, Jung, through retained counsel, filed motions pursuant to Penal Code sections 1016.2 and 1016.3 to set aside the convictions in case Nos. 14NF4348 and 15NF0802. The trial court construed the motions as petitions for writs of habeas corpus and ordered Jung's counsel to file an amended petition in proper form.

5

Jung filed a petition for writ of habeas corpus in both case Nos. 14NF4348 and 15NF0802. The petitions do not appear in the record on appeal, but in the appellant's opening brief Jung states the petitions alleged that "she did not ascertain the immigration consequences arising from her guilty pleas to the criminal charges against her in Orange County Superior Court Case Nos. 14NF4348 and 15NF0802 because the deputy public defenders who represented her during her criminal proceedings failed to investigate her immigration status or advise her that her guilty pleas could subject her to removal proceedings." Jung submitted her own declaration in support, as well as two declarations from an expert criminal defense attorney and various declarations from friends and family.

B. *The Evidentiary Hearing on the Writ Petitions*

The trial court issued an order to show cause, the People filed a return, and Jung filed a traverse. In September 2016, the court conducted an evidentiary hearing at which both Jung and her prior defense counsel, Brian Okamoto, testified.

Jung testified that her prior defense attorney, Okamoto, handed her the plea forms and told her to "sign them and initial them." She spent a "couple of minutes" reviewing the forms before signing them. Jung also testified that Okamoto did not speak with her about immigration matters, tell her that signing the plea forms would have immigration consequences for her, or advise her in any way about the immigration consequences of her plea. Jung acknowledged that she placed her initials next to the provision in the plea forms warning that she would be deported if she were not a United States citizen. She testified, however, that she "didn't read the whole thing" and nobody from the public defender's office had ever asked her about her immigration status. Jung acknowledged that the prosecutor had asked her if she understood that, if she were not a United States citizen, her plea would result in her deportation. She testified she understood this to mean "I could possibly get deported for what I was signing for." She

was "kind of scared" and not sure whether she would be deported. She did not realize she might be deported until the following January, when she was placed on ICE hold.

Okamoto testified that, although he could not recall any specific interaction with Jung, he did have a standard custom and practice that he uses in discussing a plea offer and reviewing the plea form with a client. In every case in which a client accepts a plea offer, Okamoto reviews the plea form "in its entirety" and "line by line" and explains the advisements and waivers to clients "in a way for them to understand each and every single one of . . . these numbered items on the [plea] form." He spends "some time" on the immigration consequence provision, asks about the client's immigration status, and provides the client more information about immigration consequences than is given in the plea form. Okamoto testified that he followed his custom and practice when representing Jung. In this case, because Jung was pleading guilty to deportable offenses, Okamoto would have advised her that pleading guilty would lead to her deportation.

C. *The Trial Court's Ruling on the Writ Petitions*

The trial court denied the petitions for writ of habeas corpus in a 10-page order. The court found that Jung's testimony was in direct conflict with Okamoto's testimony and, in resolving that conflict, stated: "[T]he court credits the testimony of Mr. Okamoto and rejects the testimony of [Jung]. Mr. Okamoto testified with absolute certainty about a custom and practice he has followed hundreds of times. The declarations on the plea forms—certifying that he has reviewed 'the contents of the form[s]' in general and the 'immigration consequences' in particular—strongly corroborate his testimony. From the sincerity of his testimony, it was apparent to the court that he takes this declaration very seriously." As to Jung and her testimony, the court found: "[Jung], on the other hand, testified uncertainly about a conversation that occurred one time in her life when she was under immense stress from being in custody and facing a potential for years in state prison. [Jung] admitted that, at the time, she did not think the convictions were especially important and did not take the plea process very

7

seriously. Her testimony is contradicted by plea forms with her initials next to the immigration consequences described in paragraph 11 and her signature under a declaration certifying that she did review each numbered item with her attorney. The court does not find that petitioner lied, but that, under the circumstances, she was mistaken in failing to recall the entire conversation she had with her attorney."

After reviewing the relevant law, the court concluded that Jung's claim of ineffective assistance of counsel failed because "her counsel did not perform deficiently." The court found: "Mr. Okamoto testified that, in every case, he asks his pleading clients if they were born in the United States and reads paragraph 11 of the plea form stating, in part, that the client understands that, if not a citizen, her conviction 'will have the consequence of deportation.' Furthermore, Mr. Okamoto explains what the form means, and, if defendants are pleading to deportable offenses, he tells clients that they will be deported. The court finds that this case is no exception to Mr. Okamoto's custom and practice. In this case, as in every case, Mr. Okamoto signed a declaration specifically stating that he 'had discussed . . . the immigration consequences with defendant.' As discussed above, the court finds Mr. Okamoto's testimony and his signature on this declaration to be credible and [Jung]'s contrary testimony to be incredible. [¶] Because defendant's counsel's performance was not deficient, the court need not reach the issue of whether counsel's performance caused prejudice in this case."

### III.  Jung's Section 1473.7 Motions

In September 2017, Jung filed a motion pursuant to section 1473.7 to vacate plea and judgment in both case Nos. 14NF4348 and 15NF0802. The trial court denied the motions on the ground that Jung, who was still on probation, was ineligible for relief because section 1473.7 applies "only to persons 'no longer imprisoned or restrained.'"

In April 2019, when no longer in criminal custody, Jung filed a motion pursuant to section 1473.7 to vacate plea and conviction in case No. 14NF4348 and in

8

case No. 15NF0802. These motions, the denial of which is the subject of this appeal, are referred to as the Section 1473.7 Motions. In support of the Section 1473.7 Motions, Jung submitted her own declaration and declarations from her then-current attorney (Jennifer Lim), friends, and relatives. Jung declared that none of the public defenders who had represented her, including Okamoto, had ever asked about her immigration status or whether she was born in the United States. According to Jung, Okamoto brought her the plea forms while she was in the holding cell next to the courtroom and told her to initial all the empty spaces and sign the forms. She did as she was told. She did not ask Okamoto to explain the forms because she assumed he knew what was best for her. The first time she heard about the immigration consequences of her plea was when she appeared in court the same day for sentencing and she heard someone mention immigration consequences. She "felt trapped" and was "too intimidated" to ask questions.

Jung declared that she did not learn her guilty pleas would lead to deportation proceedings until she was taken into immigration custody in January 2016 and that "[i]f I had been properly advised or understood the immigration consequences beforehand, I would not have accepted the plea bargain."

Jung also obtained and submitted copies of the attorney notes from her case file at the public defender's office. The only reference to her immigration status in the notes is on an intake sheet, where, at the line regarding citizenship, the box for "no" is checked to indicate Jung is not a United States citizen, and the words "Korea, Permanent Resident" are handwritten. The attorney notes from Jung's case file did not describe any negotiations with the district attorney's office to drop or reduce the charges against Jung in order to avoid adverse immigrations consequences from pleading guilty. Jung also submitted a copy of the transcript of the evidentiary hearing for her petitions for writ of habeas corpus.

9

Attorney Lim, who had practiced immigration law since 1992, made the following assertions in her declaration:

1. Jung did not appear to have a "sophisticated understanding about the immigration laws or meaningfully understood the immigration consequences of the criminal charges she faced as she was barely 21 years old when she signed the plea agreement."

2. It appeared that Jung had never been asked about her immigration status or informed about the immigration consequences of her guilty pleas before she signed the plea agreements.

3. "Based on my experience, if the immigration consequences of the plea were taken into account in most cases involving a non-citizen defendant, it would change the plea bargaining process in a recognizable fashion, such as a deportable charge being dropped or substituted [out] for a charge with lesser immigration consequence[s]."

4. "On the whole, it does not seem the immigration consequences of the charges were analyzed in Defendant's case"

The People submitted no declarations in opposition to the Section 1473.7 Motions but relied entirely on the order denying the petitions for writ of habeas corpus and the order denying Jung's first motions for relief under section 1473.7. The People argued that Okamoto had competently represented Jung, she had been advised of the immigration consequences of her plea before she signed the plea forms and in again open court, and the Section 1473.7 Motions raised the same issues as Jung's petitions for writ of habeas corpus.

At the hearing on the Section 1473.7 Motions, the trial court stated it would not revisit the issue of Okamoto's credibility because it accepted the earlier finding that Okamoto was credible and "not deficient in his performance given the standards at the time of the guilty plea." The court explained its objective in conducting a hearing was solely to consider the issue of prejudicial error.

At the close of the hearing, the trial court denied the Section 1473.7 Motions. Placing its reasons on the record, the court again stated its analysis was limited to the issue "whether there was an error by counsel which resulted in . . . prejudice to [Jung]." After reviewing Jung's declaration and Okamoto's testimony from the evidentiary hearing on the habeas corpus petitions, the court concluded that Jung had not shown prejudice; that is, she had not shown her inability to meaningfully understand the immigration consequences of her plea was caused by a third party. Although Jung had suffered prejudice in the sense that she now faces deportation, "there was no prejudicial error to affect her ability to meaningfully understand the immigration consequences." This appeal followed.

## DISCUSSION

### I. Standard of Review

Rulings on motions made pursuant to section 1473.7 are reviewed under either the de novo standard or the abuse of discretion standard, depending on the basis of the motion. A de novo standard of review applies when a motion pursuant to section 1473.7 is based on a constitutional right, such as the Sixth Amendment right to effective assistance of counsel. (*People v. Vivar* (2019) 43 Cal.App.5th 216, 224 (*Vivar*), review granted Mar. 25, 2020, S260270; *People v. Fryhaat* (2019) 35 Cal.App.5th 969, 975; *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 76.) A defendant's claim of deprivation of the constitutional right to effective assistance of counsel is a mixed question of fact and law that is reviewed independently. (*People v. Ogunmowo, supra*, at p. 76.) The appellate court accords deference to the trial court's factual findings if substantial evidence supports them, but exercises independent judgment in deciding whether the facts demonstrate counsel's deficient performance and resulting prejudice to the defendant. (*Vivar, supra*, at p. 224; *People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116;

11

*People v. Ogunmowo, supra*, at p. 76.) The interpretation of a statute is a question of law subject to de novo review. (*People v. Fryhaat, supra*, 35 Cal.App.5th at pp. 975-976.)

The abuse of discretion standard applies when a motion pursuant to section 1473.7 seeks relief based on statutory error or deprivation of rights guaranteed by statute. (*Vivar, supra*, 43 Cal.App.5th at p. 224; *People v. Rodriguez* (2019) 38 Cal.App.5th 971, 977-978; see *People v. Patterson* (2017) 2 Cal.5th 885, 894 [order under Penal Code section 1018 permitting withdrawal of guilty plea reviewed for abuse of discretion]; *People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 192 [order on motion to vacate conviction under Penal Code section 1016.5 reviewed for abuse of discretion].) The trial court's factual findings are reviewed under the substantial evidence standard while the trial court's legal conclusions are reviewed de novo. (*County of San Diego v. Gorham* (2010) 186 Cal.App.4th 1215, 1230.)

Under both standards of review, the appellate court does not reweigh the evidence. (*People v. Tapia* (2018) 26 Cal.App.5th 942, 951.) The appellate court does not reassess witness credibility but defers to the trial court's credibility determinations. (*Id*. at pp. 951, 953; *People v. Harris* (2015) 234 Cal.App.4th 671, 695.)

## II.  Section 1473.7

Section 1473.7, which became effective on January 1, 2017 (Stats. 2016, ch. 739, § 1), authorizes a defendant "who is no longer in criminal custody" to file a motion to vacate a conviction or sentence if "[t]he conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) "A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel." (*Ibid.*; see *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133.)

"[S]ection 1473.7 allows a defendant, who is no longer in custody, to challenge his or her conviction based on a mistake of law regarding the immigration consequences of a guilty plea or ineffective assistance of counsel in properly advising the defendant of the consequences when the defendant learns of the error postcustody." (*People v. Perez* (2018) 19 Cal.App.5th 818, 828.)  A trial court must grant the motion if the defendant establishes by a preponderance of the evidence any ground for relief specified in subdivision (a) of section 1473.7.  (§ 1473.7, subd. (e)(1); see (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1011-1012 (*Camacho*) [the moving party established a ground for relief by a preponderance of the evidence so "[t]he court was thus required to grant the motion to vacate the conviction as invalid"].)

Section 1473.7 does not require a defendant to prove an ineffective assistance of counsel claim in order to obtain relief.  (*Mejia, supra*, 36 Cal.App.5th at p. 871.)  Thus, a defendant no longer must prove that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  (*Camacho, supra*, 32 Cal.App.5th at p. 1008.)  This means too that courts are not limited to the standard for prejudice used in ineffective assistance of counsel claims—"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different" (*Strickland v. Washington* (1984) 466 U.S. 668, 694)—when ruling on motions brought under section 1473.7.  (*Camacho, supra*, at p. 1009.)  Instead, prejudice arises when there is a reasonable probability that the defendant would not have pleaded guilty and would have risked going to trial if the defendant had known that the guilty plea would have mandatory and adverse immigration consequences.  (*Mejia, supra,* at p. 871; *Camacho, supra*, at pp. 1010-1011.)

### III.  Jung's Habeas Corpus Petitions Did Not Bar Jung from Seeking Relief Under Section 1473.7

The Attorney General argues section 1473.7 does not afford Jung relief because, while in custody, she sought relief for ineffective assistance of counsel by

petitioning for writ of habeas corpus; that is, "[s]ection 1473.7 should not be interpreted to give a defendant multiple bites at the apple, providing yet another opportunity for an out-of-custody defendant to re-raise a successive claim previously raised and rejected while in custody, particularly when no new substantive support is offered."

Nothing in the language of section 1473.7 bars relief for a defendant who, while in criminal custody, brought a petition for writ of habeas corpus that was denied. A legislative purpose in enacting section 1473.7 was to grant those persons not in custody the same or similar right to relief as those persons in custody to move to vacate a conviction or sentence based on error in advising that person of the potential immigration consequences of a guilty or no contest plea. (Assem. Bill No. 813 (2015-2016 Reg. Sess.) § 1.) But this legislative purpose does not lead to the conclusion that the Legislature intended that a defendant who had been denied relief while in custody would not be able to seek relief under section 1473.7 once out of custody. The Legislature easily could have expressed that intent if it had meant to do so.

The recent amendments to section 1473.7 made clear that it did not require a finding of ineffective assistance of counsel in order to grant relief. Habeas corpus petitions based on inadequate immigration advisements by counsel typically allege ineffective assistance of counsel: That was the case here. A motion under section 1473.7 that is based on a ground other than ineffective assistance of counsel is not asserting that same ground for relief alleged in a prior habeas corpus petition.

Successive petitions for writ of habeas corpus are generally not permitted because they are considered wasteful of judicial resources and undermine the finality of judgments. (*In re Clark* (1993) 5 Cal.4th 750, 770.) A motion under section 1473.7 is not a petition for writ of habeas corpus but a statutorily authorized and defined means to challenge a judgment on the grounds specifically identified in the statute. Issues of inefficiency, waste, and finality of judgments can be dealt with, if necessary, by applying principles of collateral estoppel to decisions and findings rendered in prior habeas corpus

14

proceedings.  We shall assume, for purposes of this opinion, that the order denying Jung's petitions for writ of habeas corpus is given collateral estoppel effect.

## IV.  Jung Is Entitled to Relief Under Section 1473.7

The trial court denied the Section 1473.7 Motions on the ground that Jung had not shown prejudice; that is, she had not shown "there was a *third party* [who] caused for her not to meaningfully understand the consequences."  (Italics added.)  But to obtain relief under section 1473.7, a person need not prove ineffective assistance of counsel but only a "prejudicial error," which may be the moving party's *own* mistake of law or inability to understand the potential adverse immigration consequences of the plea. (*Mejia, supra*, 36 Cal.App.5th at p. 862; *Camacho, supra*, 32 Cal.App.5th at p. 1009; *People v. Perez, supra,* 19 Cal.App.5th at p. 828.)

In *Mejia, supra*, 36 Cal.App.5th at page 862, a panel of this court held that, to establish prejudicial error under section 1473.7, a defendant need only prove by a preponderance of the evidence:  "(1) [she] did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea; and (2) had [she] understood the consequences, it is reasonably probable [she] would have instead attempted to 'defend against' the charges."  In 1993, the defendant in *Mejia* was charged with three felony counts related to possession for sale of cocaine or cocaine base.  (*Mejia, supra*, at p. 862.)  He pleaded guilty and initialed an immigration advisement on the plea form stating he understood that if he was not a United States citizen the conviction "*may* have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  (*Id.* at p. 863.)  He served a 120-day jail sentence.  (*Ibid.*)

In 2017, the defendant brought a motion pursuant to section 1473.7 to have his convictions vacated.  (*Mejia, supra,* 36 Cal.App.5th at p. 863.)  He submitted a declaration in which he stated his former attorney (by that time deceased) had told him he

15

had no choice but to take the plea deal, never asked about his immigration status or explained that pleading guilty would lead to deportation, and told him to sign all the boxes on the plea form. (*Ibid*.) The defendant declared that he would have fought the charges or tried to negotiate an immigration-neutral plea if he had known that pleading guilty to the charges would lead to deportation. (*Ibid.*) An evidentiary hearing was conducted at which the defendant testified that his prior attorney did not discuss the possible immigration consequences of his plea and that he would not have accepted the negotiated plea and pleaded guilty if he had known "this would harm me in the future." (*Id*. at pp. 864-865.) The trial court in denying the motion treated the defendant's claim as one based on ineffective assistance of counsel and concluded the defendant "'has failed to make a sufficient showing that he would have declined the plea and risked going to trial had he been *more fully apprised* of its immigration consequences.'" (*Id*. at p. 865)

The Court of Appeal, reversing, agreed with the defendant that the "key" to section 1473.7 is not what the defense attorney said or did not say about the immigration consequences of the plea, but is "the mindset of the defendant and what he or she understood—or didn't understand—at the time the plea was taken." (*Mejia, supra,* 36 Cal.App.5th at p. 866.) Under section 1473.7, the "prejudicial error" damaging the moving party's ability to meaningfully understand the potential immigration consequences of the guilty plea thus can be "'*the defendant's own error* in . . . not knowing that his plea would subject him to mandatory deportation and permanent exclusion from the United States.'" (*Mejia, supra,* at p. 870, quoting *Camacho, supra*, 32 Cal.App.5th at p. 1009.)

The Court of Appeal concluded that the defendant's undisputed testimony at the evidentiary hearing established he did not meaningfully understand or knowingly accept the immigration consequences of his guilty plea and would not have pleaded guilty if he did. (*Mejia, supra,* 36 Cal.App.5th at p. 872.) The trial court had never made an express or implied credibility determination on those points because the court had

focused on whether trial counsel's performance was deficient. "In short," the Court of Appeal stated, "[the defendant] plainly established his own 'error' within the meaning of section 1473.7, subdivision (a)." (*Ibid.*)

As to prejudice, the court concluded there was contemporaneous evidence to substantiate the defendant's claim he would not have accepted the plea agreement if he had known the immigration consequences of pleading guilty. (*Mejia, supra,* 36 Cal.App.5th at p. 872.) This contemporaneous evidence included the defendant's own life story (he was brought to the United States from Mexico at age 14; at the time of the guilty plea he had a wife and an infant son here), and the preliminary hearing transcript, which left uncertainties as to the strength of the prosecution's evidence. Given the overall circumstances, it was likely that even after trial, the court would have sentenced the defendant to no more than a year in jail and probation. (*Id.* at pp. 872-873.)

Having found the trial court erred by denying the section 1473.7 motion, the Court of Appeal concluded the appropriate remedy was to reverse with directions to the trial court to grant the motion. (*Mejia, supra,* 36 Cal.App.5th at pp. 862, 873.)

Jung proved the requirement of prejudicial error as defined in *Mejia.* In support of the Section 1473.7 Motions, Jung submitted a declaration in which she testified that she signed and initialed the plea, as her counsel had instructed, while she was in the holding cell next to the courtroom. She did not ask Okamoto to explain the plea forms because "I assumed that he knew what was best for me." She had not previously consulted an immigration attorney and did not understand what immigration consequences pleading guilty would have. The first time she heard anything about immigration consequences was when she appeared in court for sentencing, after she had signed the plea forms. She did not ask questions because she "felt trapped" and "was too intimidated." She served her jail time and, she declared, "[i]t was only when I was taken into immigration custody in January 2016, that I realized that I would face deportation proceedings from my criminal record due to the plea agreement that I signed." Jung

17

declared: "If I had been properly advised or understood the immigration consequences beforehand, I would not have accepted the plea bargain on November 2, 2015."

Jung supplied contemporaneous evidence to substantiate her claims. She was barely 21 years old when she entered her guilty pleas. She was brought to the United States from South Korea at age three; she grew up and attended school in the United States; she considers the United States to be her home; and her friends, family, and community ties are here. Deportation to South Korea would uproot her from her life in this country and separate her from her family. Jung's attorney submitted a declaration stating it appeared that "many of the criminal charges went beyond the available evidence or the severity of the alleged offense" and "[d]ue to the practice of 'over-charging', I would not accept these charges at face value." Counsel believed the conduct charged against Jung, though "harmful," did not appear to be "sophisticated." This evidence supports a finding that, had Jung meaningfully understood the adverse immigrations consequence of pleading guilty, she would have gone to trial and taken the risk of a harsher sentence.

In opposition to the Section 1473.7 Motions, the prosecutor relied entirely on the order in the prior habeas corpus proceedings and the order denying Jung's first motion under section 1473.7. The prosecutor did not submit declarations to dispute Jung's declaration that she did not meaningfully understand the adverse immigration consequences of pleading guilty. In denying the Section 1473.7 Motions, the trial court made no findings on the credibility of the declarations of Jung and her counsel.

Under *Mejia*, Jung's "'*own error* in . . . not knowing that [her] plea would subject [her] to mandatory deportation and permanent exclusion from the United States'" satisfied the requirement for relief under section 1473.7. (*Mejia, supra*, 36 Cal.App.5th at p. 870.) Jung proved that "[she] did not 'meaningfully understand' or 'knowingly accept' the actual or potential adverse immigration consequences of the plea" and "had [she] understood the consequences, it is reasonably probable [she] would have instead

18

attempted to 'defend against' the charges." (*Id*. at p. 862.)  The trial court, not having the benefit of *Mejia*, focused instead on whether a third party caused Jung to suffer prejudice rather than considering Jung's mindset when pleading guilty.

## V.  Collateral Estoppel Does Not Bar Relief for Jung Under Section 1473.7

The doctrine of collateral estoppel or issue preclusion prevents "the relitigation of issues argued and decided in a previous case, even if the second suit raises different causes of action."  (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.)  "Under issue preclusion, the prior judgment conclusively resolves an issue actually litigated and determined in the first action."  (*Ibid.*)  "[I]ssue preclusion applies (1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party."  (*Id*. at p. 825, citing *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341.)

In denying Jung's habeas corpus petitions, the trial court resolved only the issue of counsel's performance:  The court declined to reach the issue of prejudice because it had found that counsel's performance was not deficient.  Although the court found Jung to be not credible or mistaken in her testimony that the immigration consequences were never explained to her, the court made no findings on the issue whether Jung actually and meaningfully understood the adverse immigration consequences of pleading guilty.  That issue was not necessarily decided in the habeas corpus proceeding because the finding that counsel's performance was not deficient was sufficient in itself to support denial of the petitions.

In *People v. Ruiz* (2020) 49 Cal.App.5th 1061 (*Ruiz*), the Court of Appeal addressed a similar situation.  The defendant had brought a motion for relief under section 1473.7 that was denied in 2017.  (*Ruiz, supra*, at p. 1064.)  The defendant brought a second motion for relief under section 1473.7 in 2019, which the trial court denied as an

untimely motion for reconsideration. (*Ruiz, supra*, at pp. 1064-1065.) The Court of Appeal reversed on the ground the order denying the defendant's 2017 motion did not collaterally estop the defendant from bringing the 2019 motion. (*Id*. at pp. 1068-1070.) The defendant's 2017 motion was made before the Legislature amended section 1473.7 to clarify the moving party need not prove a claim for ineffective assistance of counsel and to enlarge the time period for seeking relief. (*Ruiz, supra*, at pp. 1067, 1069.) "The new 2019 law provides a different standard for challenging and prevailing based on immigration advisement errors. Because it involves different issues than [the defendant]'s prior motion, [the defendant]'s current motion is not barred by collateral estoppel." (*Id*. at p. 1069.)

In *Ruiz,* the Court of Appeal held that denial of a section 1473.7 motion based on ineffective assistance of counsel did not collaterally estop the defendant from bringing a later motion under section 1473.7, after the Legislature had clarified the moving party need not show ineffective assistance. Likewise here, denial of Jung's petitions for writ of habeas corpus, which alleged ineffective assistance of counsel, did not collaterally estop her from obtaining relief under section 1473.7 on a different ground. The issues whether Jung meaningfully understood or knowingly accepted the adverse immigration consequences of pleading guilty, and whether she suffered prejudice, were not actually or necessarily determined in the prior habeas corpus proceedings. Thus, the order denying Jung's habeas corpus petitions did not conclusively resolve those issues.

## DISPOSITION

The order denying Jung's motions to vacate plea and conviction pursuant to section 1473.7 is reversed and the matter is remanded to the trial court with directions to grant the motions.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.

Filed 1/11/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>EUN SUNG JUNG,<br><br>    Defendant and Appellant. | G057958, G057959<br><br>(Super. Ct. Nos. 14NF4348,<br> 15NF0802)<br><br>ORDER MODIFYING OPINION<br>AND GRANTING REQUESTS<br>FOR PUBLICATION; NO<br>CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on December 17, 2020 be modified as follows:

1.  On page 18, after the first full paragraph, ending with "the risk of a harsher sentence," add the following new paragraph:

By concluding that Jung did not meaningfully understand the immigration consequences of her pleas, we do not undermine or call into question Okamoto's credibility or the veracity of Okamoto's testimony at the habeas corpus hearing. The question presented by the Section 1473.7 Motions was not what Okamoto told Jung, but what Jung's understanding was about the immigration consequences of her pleas.

2.  On page 19, after the first sentence of the second full paragraph, beginning "In denying Jung's habeas corpus petitions," add the following sentence:

> The court found Okamoto to be credible, and we have no doubt that to be the case.

These modifications do not effect a change in the judgment.

Appellant and a group consisting of county public defender offices, the Immigrant Legal Resource Center, and various law schools and organizations have filed requests that our opinion be certified for publication.  It appears that our opinion meets the standards set forth in California Rules of Court, rule 8.1105(c)(2), (3), and (4).  The requests are GRANTED.  The opinion is ordered published in the Official Reports.


FYBEL, J.

WE CONCUR:


MOORE, ACTING P. J.


ARONSON, J.

2