Filed 8/27/21  P. v. Chweya CA2/5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>RODNEY D. CHWEYA,<br><br>Defendant and Appellant. | B301780<br>Los Angeles County Super.<br>Ct. No. VA093880)<br><br>**ORDER MODIFYING OPINION AND DENYING PETITION FOR REHEARING**<br><br>[There is no change in judgment] |

BY THE COURT:

It is ordered that the opinion filed herein on July 30, 2021, is modified as follows:

1.　On pages 10-11 beginning at the bottom of page 10, delete the last paragraph that reads:

> Appellant argues that he "could have [] pled guilty to a factually related immigration-safe serious felony, such as first degree burglary."  But he does not offer any evidence that the prosecutor would have considered, or the trial court would have accepted, a different plea.  Given appellant's criminal record, his taped confession, and the seriousness of the offense, the only reasonable

inference is that neither the prosecutor nor the court would have agreed to such a disposition.  Appellant's claim that his counsel could have negotiated a different plea thus reduces to speculation without record support. (*People v. Castillo* (2021) 64 Cal.App.5th 1103, 1115 ["Appellant's speculation that another plea could have been negotiated ' "is not evidence, less still substantial evidence." ' "].)

And replace with:

Appellant argues that he "could have [] pled guilty to a factually related immigration-safe serious felony, such as first-degree burglary." The record shows appellant could not "expect or hope a different bargain" was possible in light of the seriousness of the offense, his criminal record and his confession to police that he committed  the charged sexual act with a minor.  (*Vivar*, *supra*, 11 Cal.5th at p. 529.)

**2.**     On page 12, delete the heading that reads:

***The Trial Court Did Not Err in Excluding Appellant's Declarations***

And replace it with**:**

***Any Error in Excluding Appellant's Declarations Was Harmless***

There is no change in judgment.

The petition for rehearing is denied.

_____

RUBIN, P. J.                    MOOR, J.                    KIM. J.

Filed 7/30/21 P. v. Chweya CA2/5 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B301780 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. VA093880) |
| v. | |
| RODNEY D. CHWEYA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Debra A. Cole-Hall, Judge. Affirmed.

Christopher Lionel Haberman, under appointment by Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Steven D. Matthews and Rama R. Maline, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 2006, appellant Rodney D. Chweya pled guilty to unlawful sexual intercourse with a minor. Twelve years later, Chweya moved to vacate his plea under newly enacted Penal Code section 1473.7 and claimed that, due to his defense counsel's inaccurate advice, he did not understand that his plea subjected him to deportation.[1] He also argued he was prejudiced by his counsel's failure to bargain for an immigration-neutral plea. The trial court denied the motion, and he appealed. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

### 1. Appellant's Conviction

In 2006, the district attorney charged appellant, an immigrant from Kenya, with unlawful sexual intercourse with a minor (§ 261.5, subd. (d)), committing a lewd act upon a minor (§ 288, subd. (c)(1)), and oral copulation of a minor (§ 288a, subd. (b)(2)). Appellant admitted to committing the charged acts.

On April 26, 2006, appellant pled guilty to the unlawful sex with a minor count. On the plea form, appellant initialed the following provision: "I understand that if I am not a citizen of the United States, conviction for the offense charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization under the laws of the United States."

Appellant's counsel signed a waiver form stating he had explained to appellant each of the rights set forth in the plea agreement. At a hearing, the prosecutor asked appellant, "If you are not a citizen of the United States, your plea *will* cause you to be deported, denied re-entry, denied naturalization, and amnesty. Do you understand this?" (Italics added.) Appellant responded,

---

[1]     All further statutory references are to the Penal Code.

"Yes." Appellant faced a maximum four-year sentence. The court imposed a suspended three-year state prison sentence and ordered him to serve 364 days in county jail. He was placed on five years probation. The remaining charges were dismissed.[2]

## 2. *Deportation Proceedings*

Four years later, in 2010, the Department of Homeland Security charged appellant with removability for his conviction. The department noted that appellant was a citizen of Kenya who had come to the United States on a visa in 1988 when he was 10 years old. An immigration judge sustained the charge of removability.

The Board of Immigration Appeals (Board) affirmed, holding that a conviction of unlawful sexual intercourse with a minor was an aggravated felony that subjected appellant to deportation. The Board also denied appellant's application for adjustment of status, declining to exercise its discretion to waive inadmissibility to the United States. The Board reasoned appellant did not merit a favorable exercise of discretion because he had "an extensive criminal record including, in addition to his sex offense, convictions in 1995 for assault, child cruelty, and disturbing the peace, 1997 for assault, 2002 for disturbing the peace and contempt of court, 2003 for providing false identification to a police office[r], and 2008 for driving with a suspended license, an offense which he acknowledged occurred after his license was suspended for failing to repay child support arrears."

---

[2] By pleading guilty to section 261.5, subdivision (d), appellant avoided mandatory registration as a sex offender. The dismissed charges required lifetime registration. (§ 290, subd. (d)(2)(B) & (3).)

3

### 3.    *Appellant's Motion to Withdraw His Plea*

After being charged with deportation, appellant filed a motion in the trial court under sections 1192.5, 1475 and 1487(3) to withdraw his plea on November 17, 2010.  At the motion hearing, the attorney who had represented appellant in his criminal proceedings, David Price, testified.  He told the court that, during the plea negotiations, appellant had been "concerned about his being deported," and had pled "to what [Price] thought was a misdemeanor so he would not be deported."  Counsel testified that he told appellant that he could "come back and reduce the felony to a misdemeanor . . . and if it was a misdemeanor, [appellant] would not be deported."

The trial court denied the motion, reasoning that appellant "had a taped confession to basically three felony counts, two of them definitely not reducible, and, as you say, maybe the lifetime [sex offender] registration would be nothing if he got deported; but nevertheless, you take that into consideration if you think he's going to stay here . . . I don't think I can ignore the fact that this was not a case Mr. Chweya could go to trial on.  I agree the deportation was a harsh consequence, but I don't believe there's sufficient cause for me to set aside the plea . . . ."

### 4.    *Appellant's Motion to Reopen His Case and Vacate His Conviction*

Eight years later, in 2018, the Legislature enacted section 1473.7 which provides that a court "shall" vacate a conviction or sentence upon a showing, by a preponderance of the evidence, of "prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere."  (§ 1473.7, subds. (a)(1), (e)(4).)

In December 2018, appellant filed a motion to reopen his case and vacate his conviction under section 1473.7 and 1016.5.[3] It is the denial of this motion that forms the basis of the appeal. He argued he did not meaningfully understand, defend against, or knowingly accept the adverse immigration consequences of his plea. His "attorney did not advise him of any immigration consequences or even speak with him as to any consequences that would accompany his plea."

Appellant supported his motion with declarations by himself and counsel Price. In appellant's declarations, he stated that his attorney "never discussed with [him] any immigration consequences that stemmed from entering the plea." Had his attorney or the trial court advised him "of the immigration consequences triggered by [his] plea, [appellant] would not have entered" the plea, but would have attempted to negotiate an alternative plea or taken his case to trial.

Although appellant stated he did not discuss immigration consequences with his attorney, Price stated in a declaration that appellant's immigration status "was an important consideration in this case." At the time of the plea deal, Price believed that appellant's sentence "would not have any effect" on appellant's immigration status because if appellant complied with the terms

---

[3] Section 1016.5, among other things, contains the statutory mandate that a defendant must be advised of the immigration consequences of the plea.

This motion was taken off calendar due to confusion about whether appellant had retained new counsel. Several months later, in March 2019, appellant filed a new motion to vacate his conviction making the same arguments. The trial court considered the materials filed in support of both motions at the hearing.

and conditions of probation he could apply to the court to have the charge reduced from a felony to a misdemeanor.

Appellant was unable to attend the hearing on his motion because by then he had been deported to Kenya. However, Price testified at the hearing. Price's testimony was inconsistent as to whether he and appellant had discussed the immigration consequences of the plea. Price initially testified that he thought appellant was pleading to a misdemeanor because appellant was only sentenced to 364 days in jail. Price did not know if the plea's immigration consequences "would be neutral, but I didn't think he would be deported." Price did not remember discussing the plea's immigration consequences with appellant, testifying: "other than to take the plea, I don't recall advising him on that issue at all, but I don't recall not advising him." Price was testifying in 2019 about events that had taken place in 2006.

Later on in the hearing, Price testified that he had understood that appellant was pleading to a felony. In addition, when asked whether Price had "explained to [appellant] that within a few years, if he stayed out of trouble, no violation problems, if he was able to reduce the felony . . . to a misdemeanor, that he would no longer be deported," Price responded "I believe that's correct. Yes." Price later clarified that he told appellant that if there were no probation violations, "there is a possibility that [appellant] can apply to have the sentence reduced after a while so [he] would not be deported."

After Price testified, the prosecution moved to exclude appellant's declarations because appellant was not available for cross-examination. Appellant's counsel objected, arguing the declarations were admissible because appellant was unavailable as he had been deported to Kenya. The court ruled that appellant's declarations were inadmissible.

The court denied appellant's motion, and concluded that appellant had understood the immigration consequences of his conviction. The court noted that appellant initialed the waiver form dealing with the immigration consequences of his plea, and appellant's counsel indicated he went over that form with appellant. The court found that Price and appellant both "knew that he was pleading to a felony and the plan was that if he got through probation, it could be reduced to a misdemeanor." The court noted that even if it had admitted appellant's statements, the "ruling would not change." Appellant timely appealed.

## *DISCUSSION*

### 1.    *Section 1473.7*

Under section 1473.7, a person who is no longer in criminal custody may move to vacate a conviction or sentence where the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).)

After section 1473.7 was first enacted in 2017, California courts uniformly assumed that moving parties who claimed to have received erroneous information from counsel must demonstrate that counsel rendered ineffective assistance under the guidelines enunciated in *Strickland v. Washington* (1984) 466 U.S. 668. (*People v. Camacho* (2019) 32 Cal.App.5th 998, 1005.) In 2018, the Legislature amended section 1473.7 to provide that a finding of prejudicial error "may, but need not, include a finding of ineffective assistance of counsel." (*Camacho,* at p. 1006, italics omitted.)

Showing prejudicial error under section 1473.7, "means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood

7

its actual or potential immigration consequences. When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*People v. Vivar* (2021) 11 Cal.5th 510, 529-530 (*Vivar*).)

We review the trial court's ruling on a section 1473.7 motion under the independent standard of review. (*Vivar*, *supra*, 11 Cal.5th at p. 524.) " '[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that ' "[i]ndependent review is not the equivalent of de novo review . . . ." ' [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. [Citations.] . . . In section 1473.7 proceedings, appellate courts should similarly give particular deference to factual findings based on the trial court's personal observations of witnesses. [Citation.] Where . . . the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding." (*Id.* at p. 527.)

## 2. *Appellant Did Not Demonstrate Prejudice*

We briefly discuss appellant's contention that he was not adequately advised of the immigration consequences of his plea.

8

Ultimately, we do not have to decide that issue because appellant has not shown a reasonable probability that but for any deficiency in the advisement, he would not have entered the same plea. Thus, appellant has not shown legal prejudice from any inadequate advisement.

Appellant argues that his conviction must be vacated because Price failed to properly advise him of the immigration consequences of his plea or pursue an immigration-neutral plea deal. Appellant contends he did not meaningfully understand the adverse immigration consequences of his plea and would not have accepted the plea if he had. Instead, he would have sought a plea to some other charge or faced the risks of trial.

In support of this claim, appellant cites both to Price's post hoc statements and evidence contemporaneous to the time of his plea. Appellant first argues that the record establishes Price misadvised him "that by pleading Guilty to this charge he would be able to protect his immigration status as it could be later reduced to a misdemeanor . . . ." We initially observe that, over the years, Price provided inconsistent testimony on what he advised appellant during the plea negotiations. In 2010, Price testified he told appellant he could avoid deportation by applying to reduce the felony to a misdemeanor. But in 2019, at the section 1473.7 hearing, Price initially said he could not remember discussing with appellant the immigration consequences of his plea. Price then revised this statement, testifying that he told appellant "there is a possibility" appellant could apply to have his sentence reduced so he "would not be deported."

We do not read this record as establishing that Price told appellant he would be able to "protect his immigration status" by pleading guilty. Instead, when questioned by the district attorney on his statements to appellant, Price revised his previous version and testified that he told appellant there was a

9

possibility he could avoid deportation by subsequently moving to reduce the felony to a misdemeanor. To the extent Price's testimony was internally inconsistent, it was for the trial court—not this court—to resolve the conflict. The trial court's findings as to Price's testimony do not support appellant's argument on appeal.

As for appellant's own understanding of the immigration consequences at the time of his plea, the only contemporaneous evidence on this point was that appellant understood his plea subjected him to deportation: when the district attorney asked him at the plea hearing whether he understood his plea would cause him to be deported, appellant responded without hesitation, "Yes." (Cf. *Lee v. United States* (2017) 137 S.Ct. 1958, 1968 [when the trial judge during a plea colloquy asked the defendant if he understood he could be deported and whether that affected his decision, the defendant replied that it did and asked his attorney for advice].)

We do not resolve whether appellant understood the immigration consequences of the plea. Instead, we decide this appeal on appellant's failure to show prejudice from any lack of understanding. Even if Price erroneously suggested to appellant there was a possibility he could avoid deportation by later applying to reduce his conviction, appellant has not shown a reasonable possibility that he would have chosen to lose the benefits of the plea had his attorney told him otherwise.

Appellant argues that he "could have [] pled guilty to a factually related immigration-safe serious felony, such as first-degree burglary." But he does not offer any evidence that the prosecutor would have considered, or the trial court would have accepted, a different plea. Given appellant's criminal record, his taped confession, and the seriousness of the offense, the only reasonable inference is that neither the prosecutor nor the court

10

would have agreed to such a disposition.  Appellant's claim that his counsel could have negotiated a different plea thus reduces to speculation without record support.  (*People v. Castillo* (2021) 64 Cal.App.5th 1103, 1115 ["Appellant's speculation that another plea could have been negotiated ' "is not evidence, less still substantial evidence." ' "].)

The Supreme Court's recent *Vivar* opinion stands in contrast to the case before us.  In *Vivar,* the defendant moving for section 1473.7 relief filed a declaration claiming he would never have entered his plea had he understood that it would require his deportation.  (*Vivar*, *supra*, 11 Cal.5th at p. 530.)  His counsel's recollection and contemporaneous notes showed that the defendant had been concerned about the "consequences" of his plea.  (*Ibid.*)  The record also showed that the prosecution had offered the defendant a plea under which he could have avoided mandatory deportation.  (*Id.* at p. 531.)  Under these circumstances, the court found " ' "a reasonable probability" ' that the defendant could have tried 'to obtain a better bargain that [did] not include immigration consequences.' [Citation.]" (*Ibid.*)

Here, appellant offered no contemporaneous evidence, such as his counsel's notes, that reflected either appellant's concern about the immigration consequences of his plea when he accepted the bargain or that he was offered a different plea or that he would have gone to trial if he had fully understood the immigration consequences.  (See *Lee v. United States*, *supra*, 137 S.Ct. at p. 1967 ["Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies [but] should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences."]; see *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 78 [the principles in *Lee v. United*

11

*States* are applicable to a prejudice analysis under section 1473.7].)

Appellant has not shown prejudice.

### 3. *The Trial Court Did Not Err in Excluding Appellant's Declarations*

Appellant argues the trial court erred in excluding his declarations on the ground that he was not present at the hearing to be cross-examined. Any error in the trial court's ruling is harmless.[4] (See *People v. Cudjo* (1993) 6 Cal.4th 585, 611 [we review the erroneous exclusion of evidence for whether it is reasonably probable the defendant would have achieved a more favorable result had the evidence been admitted].) One part of the excluded testimony was that Price "*never* discussed with me *any* immigration consequences that stemmed from entering the plea." (Italics added.) This statement actually undercuts appellant's argument that his attorney misinformed him that he had a chance of avoiding deportation. The statement also suggests that appellant was not concerned about the immigration consequences of his plea because, even though the plea form and oral advisement informed he could or would be deported, appellant chose not discuss the subject with his attorney.

Other parts of his declaration included an uncorroborated assertion that he would have rejected the plea had his attorney properly advised him that his conviction "would result in

---

[4] Respondent argues that appellant forfeited the argument that under section 1473.7 an unavailable defendant may submit a declaration even though there would be no opportunity for cross-examination. The point is a question of law without controverted facts. Accordingly, we find no forfeiture. (See *DD Hair Lounge, LLC v. State Farm General Ins. Co.* (2018) 20 Cal.App.5th 1238, 1242.)

12

deportation." (See *Vivar*, *supra*, 11 Cal.5th at p. 530 [when a defendant claims he would not have entered his plea had he understood it would require his deportation, he must " ' "corroborate such assertions with 'objective evidence.' " ' "].)

From our reading of the record, it is unlikely that if the trial court had admitted the declarations, the court would have ruled differently. But we need not speculate for the trial court has given us the answer: The trial court expressly said appellant's statements "would not change" its ruling:

> "I believe Mr. Chweya understood he faced deportation. I think the 364 days was a device that they were trying to use to hope that he would not be deported. I think that sometimes occurs. But that is just someone or people trying to work around something. But I think that Mr. Chweya knew that he was going to be deported and they were hoping that if the judge sentenced him a month later, because he pled in April and was sentenced in May, that they were hoping that maybe he was able to slip through the immigration custody."

We take the trial court's statement to mean that in addition to resolving any conflicts in Price's testimony in the People's favor, the court would have resolved any conflicts between the testimony of Price and appellant's declarations also in favor of the People. We conclude any error—error that we do not find—was necessarily harmless.

### DISPOSITION

The judgment is affirmed.

RUBIN, P. J.

WE CONCUR:

MOOR, J.                    KIM, J.

13