Filed 10/20/21  P. v. Bohmwald CA2/7
Opinion following rehearing

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> LINDSAY BOHMWALD, <br><br> Defendant and Appellant. | B300743 <br><br> (Los Angeles County <br> Super. Ct. No. NA068801) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Laura L. Laesecke, Judge.  Affirmed.

Sarvenaz Bahar, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta and Xavier Becerra, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D.

Matthews, Supervising Deputy Attorney General, and Rama R. Maline, Deputy Attorney General, for Plaintiff and Respondent.

**INTRODUCTION**

Lindsay Bohmwald appeals from the superior court's order denying her motion under Penal Code section 1473.7[1] to vacate her conviction by plea to grand theft of access card information (§ 484e, subd. (d)). Bohmwald, a native of Venezuela, argued her trial counsel did not inform her of the immigration consequences of pleading no contest, which "damage[ed] her ability to understand or defend against the adverse immigration consequences of her plea." The superior court denied her motion.

On April 16, 2021 we filed our original opinion in this case. We held the evidence did not compel a finding in Bohmwald's favor and affirmed the superior court's order denying the motion under section 1473.7. (*People v. Bohmwald* (Apr. 16, 2021, B300743) [nonpub. opn.].) Following the Supreme Court's decision in *People v. Vivar* (2021) 11 Cal.5th 510 (*Vivar*), we ordered rehearing and supplemental briefing. Reviewing the record independently, and following the Supreme Court's directive in *Vivar* to give deference to the superior court's findings based on live testimony, we conclude Bohmwald failed to show she was entitled to relief under section 1473.7. Therefore, we affirm.

---

[1] Statutory references are to the Penal Code.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.   *2006:  Bohmwald Pleads No Contest to a Felony*

In 2006 police arrested Bohmwald for driving a stolen car and having in her possession checks that did not belong to her. The People charged Bohmwald with receiving or concealing stolen property, in violation of section 496, subdivision (a), and acquiring or retaining possession of access card account information of another person with the intent to use it fraudulently, in violation of section 484e, subdivision (d).[2]

At an early disposition hearing, counsel for Bohmwald informed the court Bohmwald wanted to plead no contest to violating section 484e, subdivision (d).  The prosecutor stated the terms of the plea agreement:  The court would place Bohmwald on formal probation for three years, and Bohmwald would perform 60 days of community service and receive credit for the time she had served in custody.  Before the court accepted Bohmwald's plea, the prosecutor confirmed with her that she wanted to proceed with her plea and asked her a series of questions.  The prosecutor asked Bohmwald whether she understood the People were charging her with "receiving stolen property" and "possession of an access card or account information belonging to somebody else," whether she had an opportunity to discuss her constitutional rights with her attorney, whether she understood those rights, and whether she

---

[2]   "[A]ccess card information [is] a term encompassing information related to credit and debit cards, bank accounts, and similar financial devices."  (*People v. Liu* (2019) 8 Cal.5th 253, 255-256.)

3

understood she had the rights to a jury trial, to confront and cross-examine witnesses, to present a defense and testify in her defense, to use the subpoena power of the court, and not to incriminate herself. Bohmwald answered "yes" to each of the questions.

After Bohmwald affirmed that she wanted to waive her constitutional rights, the prosecutor admonished Bohmwald: "There are certain consequences as a result of your plea. If you are on probation or parole in any other matters, your plea today will result in a violation of that probation or parole. You could spend additional time in custody. If you are not a citizen of the United States, your plea today will result in your deportation, denial of naturalization and denial of reentry into the United States." The prosecutor asked: "Do you understand both of those things, Ms. Bohmwald?" Bohmwald answered, "Yes." The prosecutor informed Bohmwald that the maximum term of imprisonment she could face if she violated the terms and conditions of her probation was three years eight months, that she had the obligation to pay restitution, and that she would have a felony conviction on her record. The prosecutor asked Bohmwald, "Do you understand?" Bohmwald answered, "Yes."

Following the prosecutor's admonitions and Bohmwald's responses confirming she understood each admonition, Bohmwald pleaded no contest to violating section 484e, subdivision (d). The trial court found Bohmwald's waivers and plea "were knowingly, intelligently and freely made with an understanding of the consequences." The court found Bohmwald guilty of violating section 484e, subdivision (d). The court instructed Bohmwald, among other terms and conditions of her probation: "[Y]ou are ordered to have no blank checks in your

4

possession. You may not write any portion of any checks. You may not have a bank account upon which you may draw checks. You may not use, apply or possess any credit or ATM card." Bohmwald accepted the terms and conditions of her probation, and the court dismissed the charge under section 496, subdivision (a), "pursuant to the plea agreement."

B.    *2007: Bohmwald Pleads No Contest to Another Felony*

Sixteen months later, in 2007, police arrested Bohmwald again for having stolen property in her car. Bohmwald pleaded no contest to a felony charge of violating section 496, subdivision (a). Bohmwald signed a plea form and placed her initials in the box next to the statement: "I understand that if I am not a citizen of the United States, the conviction for the offense charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Counsel for Bohmwald in that case signed the plea form attesting he had explained to Bohmwald all the rights described in the form.[3] The trial court asked Bohmwald if she understood "everything" in the form, and Bohmwald replied, "Basically." The court confirmed Bohmwald indicated she understood the

---

[3]    Bohmwald also pleaded no contest to a misdemeanor charge of grand theft (§ 487, subd. (a)) in a third case. The trial court that accepted the plea found that Bohmwald read and signed a misdemeanor advisement form on which she placed her initials next to each of the "applicable provisions" to indicate she understood the provision.

5

statements on the form by placing her initials in the box next to each statement.[4]

C.   *2018:  Bohmwald Files a Motion Under Section 1473.7 To Vacate Her 2006 Conviction*

In 2018 Bohmwald filed a motion under section 1473.7 to vacate her 2006 conviction.  Bohmwald argued that her attorney in 2006 did not advise her of the immigration consequences of her plea and did not bargain with the prosecutor for an "immigration safe plea," that she "was deprived of effective assistance of counsel," and that "she would not have accepted her defense attorney's recommendation to plead to a violation of . . . [section] 484e, [subdivision] (d), as a felony had she known it would preclude her from obtaining US Citizenship and lead to deportation with no ability to return to the United States."[5]

---

[4]   In 2018 Bohmwald successfully moved under section 1016.5 to vacate her 2007 felony conviction (which in 2016 had been reduced to a misdemeanor under Proposition 47) based on the trial court's failure to give the advisement required by that statute.  (*People v. Bohmwald* (June 10, 2021, B300413) [nonpub. opn.].)  "[S]ection 1016.5 requires that before accepting a plea of guilty or nolo contendere to any criminal offense, the trial court must advise the defendant that if he or she is not a United States citizen, conviction of the offense may result in deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  (*People v. Martinez* (2013) 57 Cal.4th 555, 558; see § 1016.5, subd. (a).)  After the court vacated her 2007 conviction, a jury convicted Bohmwald of violating section 496, subdivision (a), and Division Two of this court affirmed.  (*People v. Bohmwald, supra*, B300413.)

[5]   Bohmwald also filed a motion under section 1016.5, arguing the trial court in her 2006 case failed to advise her of the

6

Bohmwald submitted a declaration in support of her motion stating that she was born in Venezuela, that when she was two years old her parents brought her to the United States, and that she obtained her green card in 2004. According to Bohmwald, after the police arrested her in 2006, she spent 10 days in custody and met her attorney for the first time on the day she pleaded no contest. She stated her attorney never spoke to her about the immigration consequences of her plea, did not inquire about her immigration status, and did not bargain with the prosecutor for an "alternate offer" or "an immigration safe plea." Bohmwald opined her attorney did not ask her about her immigration status because "most people assume[ed she was] Caucasian due to [her] light complexion, the sound of [her] name, and [her] ability to speak perfect English." Bohmwald said that, had her attorney advised her of the "devastating immigration consequences upon entering this plea," she "would have sought another alternative plea and/or taken [her] case to trial. Under no circumstances would [she] have agreed to accept a deal that would strip [her] of [her] ability to remain" in the United States. Bohmwald explained that, when she applied for United States citizenship in 2018, she learned her 2006 felony conviction precluded her from becoming a citizen and subjected her to "removal/deportation, permanent banishment from the United States, and exclusion from admission."

---

immigration consequences of her plea. Bohmwald withdrew this motion after the People produced a copy of the transcript of the plea proceedings that showed the prosecutor gave the advisement under section 1016.5. (See *People v. Superior Court* (*Sanchez*) (2014) 223 Cal.App.4th 567, 575 [it is "common practice for the prosecutor, rather than the court, to advise of [the defendant's] rights and the consequences of a guilty plea"].)

At the hearing on the motion Bohmwald testified about many of the things she had stated in her written declaration. On cross-examination Bohmwald testified she did not recall the prosecutor asking her questions before the court accepted her plea or advising her of her right to a jury trial and the immigration consequences of her plea. When the prosecutor at the hearing asked Bohmwald questions about the stolen checks and other aspects of the underlying crime, counsel for Bohmwald objected the questions were argumentative and beyond the scope of the motion. The court overruled the objections, stated that the questions were "testing [Bohmwald's] credibility," and remarked, "It's interesting to the court as to what she does and does not remember."[6] The superior court had the following exchange with Bohmwald:

"The Court: In the 2006 case, how long had you been in custody before you took the plea agreement? Do you know?

"[Bohmwald]: It wasn't very long. Probably a couple of days.

"The Court: Okay. And you wanted out of jail?

"[Bohmwald]: Of course, yes.

"The Court: That would have been a priority, right, to get out of jail?

"[Bohmwald]: Definitely."

Bohmwald also testified that, a little more than a year after her 2006 plea, the police stopped her as she was driving, searched

---

[6] For example, Bohmwald testified she did not remember a bag containing checks the police found in the back of the car she was driving and denied the bag and the checks were hers. Following her arrest in 2006, Bohmwald provided a written statement to the police: "The checks in [the] bag are mine but outside are not. Probably left there from previous owner."

her car, and found a bag containing certain items that did not belong to her.  Bohmwald confirmed that in 2007 she pleaded no contest to receiving stolen property.  Referring to her written waivers and plea in the 2007 case, Bohmwald testified she did not read the statements next to the boxes before placing her initials in the boxes.

Counsel for Bohmwald agreed the court could consider that Bohmwald "continued to enter into a plea agreement to . . . charges that . . . she could have been deported on" and "chose not to negotiate for a lower charge that would have no impact on her immigration status."  But counsel pointed out "those pleas were vacated pursuant to [section] 1016.5."

The prosecutor asked the court "to make a credibility determination against" Bohmwald because the transcript of the 2006 plea proceedings showed that "she was specifically advised of the immigration consequences" and that she said "yes" when asked if she understood.  The prosecutor argued Bohmwald's testimony was "not credible and not trustworthy" and cited as an example Bohmwald's testimony about the stolen checks, which contradicted her written statement from 2006.

The court considered Bohmwald's testimony, reviewed the facts of the case, and concluded Bohmwald had "every reason" in 2018 to say she did not understand the consequences of her plea.  The court said it also considered what Bohmwald remembered and what the plea transcript showed the prosecutor told her ("You will be deported").  The court pointed out that, two years before her 2006 conviction, Bohmwald knew her immigration status when she obtained her green card.  The court stated that, when the prosecutor told Bohmwald that she would be deported, Bohmwald should have taken "some responsibility for that, and

9

[said], Wow, I didn't know that. . . . Wait, I want to talk to my attorney. I have questions." The court said that Bohmwald instead stated, "I understand."

The court stated that Bohmwald made some "bad decisions" in 2006, that she "wanted out of custody," and that the plea "was [her] way out." The court said it understood why Bohmwald "took this deal": Had she "gone to trial, [she] definitely would have been deported then." Thus, the court found, there were "some advantages to being released immediately." The court addressed Bohmwald: "If I have to look back and [try] to encapsulate what your life was in 2006, I think you were making some decisions that you personally weren't that concerned about being deported, or you would have stopped committing crimes. . . . And you would have been worried about your family."

Finally, the court commented on Bohmwald's testimony: "I am not . . . saying that you are a liar. But I don't think that you accurately remember what your attorney might have told you about immigration consequences. You don't have the benefit of her testimony. You can't just assume that you're right and she didn't. . . . But in looking at what you do remember and what you don't remember, I am not sure that you are accurate when you are saying . . . that she did not advise you of your consequences." The court stated that "maybe" Bohmwald's attorney "skip[ped the] part" about immigration consequences, but that Bohmwald "had a chance to ask her, and . . . [she] didn't do it on the other cases either." The court denied the motion "without prejudice," ruling Bohmwald had not met her burden to show by a preponderance of the evidence the court should vacate her conviction. Bohmwald timely appealed.

10

D. *We Affirm the Superior Court's Order, the Supreme Court Decides* Vivar*, and We Order Rehearing*

In her opening brief Bohmwald argued the superior court erred by applying an incorrect legal standard that conditioned her entitlement to relief on whether she sought advice from her attorney, failing to make a finding on whether her attorney properly advised her, and concluding she did not satisfy the requirements of section 1473.7. In affirming the superior court's order, we held that the court did not base its order denying relief under section 1473.7 on Bohmwald's failure to seek advice from her attorney, that the court made the necessary findings under section 1473.7, and that the evidence did not compel a finding that Bohmwald established prejudicial error entitling her to relief. (*People v. Bohmwald*, *supra*, B300743.)

Two weeks after our original decision, the Supreme Court decided *Vivar*, *supra*, 11 Cal.5th 510, which clarified the standard of review for orders granting or denying a motion under section 1473.7. (*Vivar,* at p. 524.) The Supreme Court in *Vivar* also discussed the kind of objective evidence required to corroborate a defendant's assertion he or she would not have accepted a plea that included adverse immigration consequences. (*Id*. at p. 530.) We ordered rehearing of our decision in this case under California Rules of Court, rule 8.268(a), and directed the parties to file supplemental briefing on the effect, if any, of the Supreme Court's decision in *Vivar* on the issues in this appeal.

Bohmwald argues in her supplemental brief that under *Vivar* the superior court erred in not making a finding whether Bohmwald's trial counsel failed to properly advise her, that Bohmwald established she did not understand the immigration consequences of her plea, and that Bohmwald established "her

11

counsel's error was prejudicial."[7]  We conclude that the superior court made the necessary findings under section 1473.7 and that, applying the independent standard of review prescribed by *Vivar*, *supra*, 11 Cal.5th 510 at page 524, Bohmwald failed to satisfy the requirements of section 1473.7.

## DISCUSSION

A.      *Applicable Law and Standard of Review*

Section 1473.7, subdivision (a)(1), provides in pertinent part:  "A person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" where the "conviction or sentence is legally invalid due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere. A finding of legal invalidity may, but need not, include a finding of ineffective assistance of counsel."  (See *Vivar*, *supra*, 11 Cal.5th at p. 517 ["A successful section 1473.7 motion requires a showing, by a preponderance of the evidence, of a *prejudicial* error that affected the defendant's ability to meaningfully understand the

---

[7]      As discussed, Bohmwald argued in her opening brief the superior court erred in conditioning her entitlement to relief on whether she sought advice from her attorney.  Bohmwald does not discuss this issue in her supplemental brief.  To the extent Bohmwald still challenges the superior court's ruling in this regard, it is without merit.  The two remarks Bohmwald excerpted to support her position reflect the court's rationale for questioning Bohmwald's recollection of the plea proceedings, not a condition for granting relief under section 1473.7.

12

actual or potential immigration consequences of a plea."]; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1005 [same].)

"What someone seeking to withdraw a plea under section 1473.7 must show is more than merely an error 'damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences' of the plea. [Citation.] The error must also be 'prejudicial.'" (*Vivar, supra*, 11 Cal.5th at p. 528.) "[S]howing prejudicial error under section 1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar,* at p. 529; see *People v. DeJesus* (2019) 37 Cal.App.5th 1124, 1133-1134; *People v. Mejia* (2019) 36 Cal.App.5th 859, 862.)

"[W]e review . . . rulings [under section 1473.7] independently . . . ." (*Vivar, supra*, 11 Cal.5th at p. 524; see *People v. Lopez* (2021) 66 Cal.App.5th 561, 574 [under *Vivar*, "a motion to withdraw a plea under section 1473.7 is reviewed independently rather than for abuse of discretion"].) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.] When courts engage in independent review, they should be mindful that "'[i]ndependent review is *not* the equivalent of de novo review . . . .'" [Citation.] An appellate court may not simply second-guess factual findings that are based on the trial court's own observations. . . . In section 1473.7 proceedings, appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses." (*Vivar*, at pp. 527-528.) "Ultimately

13

it is for the appellate court to decide, based on its independent judgment, whether the facts establish prejudice under section 1473.7." (*Vivar,* at p. 528.)

B. *The Superior Court Did Not Err in Ruling Bohmwald Failed To Show Error*

Bohmwald argues she "established that her plea counsel's errors damaged her ability to understand, defend against or knowingly accept the adverse immigration consequences of her plea." Bohmwald cites her testimony that her attorney failed to discuss immigration consequences with her and that "she had no idea at the time of her plea that her plea would have any impact on her immigration status."

The superior court, however, after considering what Bohmwald did and did not remember, questioned Bohmwald's recollection of the 2006 proceedings and found Bohmwald's testimony was not credible. The record fully supported the court's finding. For example, Bohmwald testified at the hearing she did not "remember anything about stolen checks." As discussed, not only did Bohmwald admit to the police in 2006 the checks the police found in a bag belonged to her, the trial court in 2006 specifically prohibited her, as a term of her probation (a term she said she understood and accepted), from handling checks. Bohmwald also testified she did not remember the prosecutor speaking to her "at all," but the prosecutor spoke to Bohmwald at the plea hearing at length, and Bohmwald answered all of the prosecutor's questions. Finally, Bohmwald testified, "If any type of conversation [on] immigration would have been brought up, I think I would have remembered that." Yet, Bohmwald did not remember the prosecutor's

14

straightforward warning that her plea "will" result in her deportation (or her confirmation she understood the warning).

Citing the court's comment that the court was not saying she was a liar, Bohmwald argues the court did not actually make a credibility finding. The court, however, immediately qualified that comment by stating it did not think that Bohmwald "accurately" remembered what her attorney may have told her about immigration consequences. In context, the court's remark it did not think Bohmwald was a "liar" did not mean, as Bohmwald argues, that the court did not make a credibility finding or that the court found her credible. The opposite. The court found Bohmwald's recollection unreliable, and after listening to Bohmwald's testimony that her attorney failed to advise her of the immigration consequences of her plea, did not believe her. This was a credibility finding against Bohmwald (see *People v. Lopez* (2018) 5 Cal.5th 339, 352 ["'a failure to remember aspects of the subject of the testimony'" presents a question "'of credibility for resolution by the trier of fact'"]), which the Supreme Court requires us to defer to (see *Vivar*, *supra*, 11 Cal.5th at p. 528).

The superior court also did not believe Bohmwald's assertion she did not understand the immigration consequences of her plea. As discussed, the court stated it would have expected that, on hearing the prosecutor's admonition, Bohmwald would have expressed hesitation or asked to speak with her attorney; instead, the court observed, Bohmwald said she understood the consequences. (See *People v. Tapia* (2018) 26 Cal.App.5th 942, 952-953 ["[a]fter being specifically advised by the trial court his plea would lead to his deportation and denial of readmission to the United States, [the defendant] did not request more time to

15

speak with counsel or further consider the appropriateness of entering a plea," indicating he "had no need for a further conversation" with his trial counsel because counsel had already advised him].) We again defer to the court's credibility determination. (See *Vivar*, *supra*, 11 Cal.5th at p. 528.)

Bohmwald argues the Supreme Court in *Vivar* "cited approvingly to numerous cases where the appellate court *rejected* the trial court's inference that the defendant must have understood the adverse immigration consequences of the plea because *he did not ask questions* after receiving the *Tahl* form or the court's admonishment."[8] Bohmwald misreads *Vivar*. In *Vivar*, *supra*, 11 Cal.5th 510 the Supreme Court stated that the "generic advisements in the plea form" (which advised that deportation "was a possibility") did not "undermine [the Supreme Court's] conclusion that [the defendant] was prejudiced by [his] counsel's failure to inform him that his plea would result in this deportation." (*Id*. at p. 533.) The Supreme Court cited two cases, *People v. Espinoza* (2018) 27 Cal.App.5th 908 and *People v. Ogunmowo* (2018) 23 Cal.App.5th 67 (*Ogunmowo*), which Bohmwald argues support her position.

Neither does. In *People v. Espinoza, supra,* 27 Cal.App.5th 908 the court held trial counsel provided ineffective assistance because the immigration advisement in the plea form stated the conviction "'*may* have'" the consequence of deportation, but counsel did not advise the defendant that "deportation would be

_____

8        A *Tahl* form is a plea form that reflects the constitutional advisements mandated under *In re Tahl* (1969) 1 Cal.3d 122, disapproved on another ground in *Mills v. Municipal Court* (1973) 10 Cal.3d 288, and *Boykin v. Alabama* (1969) 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274.

16

*mandatory*." (*Id.* at pp. 914, 916.)  The prosecutor's admonition here, that the plea "will result" in Bohmwald's deportation, unlike the plea form in *Espinoza*, accurately advised Bohmwald deportation was mandatory.  In *Ogunmowo, supra,* 23 Cal.App.5th 67 trial counsel erroneously advised the defendant that, "'because he was a lawful permanent resident of the United States, . . . he would not face any immigration consequences because of his plea in this case.'" (*Id.* at p. 70.)  The court held:  "The fact that the court advised [the defendant] that immigration consequences arising from the guilty plea were *possible* does not preclude [the defendant] from establishing that counsel's incorrect advice prejudiced him."[9] (*Id.* at p. 80.)  There is no evidence Bohmwald's trial counsel ever assured her that she would not be deported.  (Cf. *People v. Camacho*, *supra*,

---

[9]    Bohmwald also cites *People v. Lopez*, *supra*, 66 Cal.App.5th 561, a recent case that she says is relevant to "whether [she] did not adequately [understand] the adverse immigration consequences of her plea even though the prosecutor (on behalf of the trial court) provided her with the admonition required by . . . section 1016.5."  In *Lopez* the court held the trial court's admonition the defendant's plea "'will have immigration consequences,'" was "not a substitute for counsel's advice" under section 1016.3 because a "proper advisement by the court does not foreclose the possibility of relief when counsel provides inaccurate or incomplete advice regarding immigration consequences." (*Lopez*, at pp. 577-578.)  As discussed, Bohmwald did not present evidence her trial counsel gave her any inaccurate advice.  And section 1016.3, effective in 2016 (*Lopez,* at p. 576), does not apply in this case.  (See *People v. Olvera* (2018) 24 Cal.App.5th 1112, 1116 [section 1016.3 does not apply retroactively].)

17

32 Cal.App.5th at p. 1009 ["defendant's claims of error were supported by his former attorney's undisputed testimony that he told [him] only that the charge *could* subject him to deportation"]; *Ogunmowo*, at pp. 76-77 [trial counsel's declaration corroborated the defendant's assertion that his attorney gave him incorrect advice about the immigration consequences of the guilty plea].)

In addition, the transcript of the 2006 proceedings, which is the best contemporaneous evidence of Bohmwald's understanding of the consequences of her plea, contradicted Bohmwald's testimony 12 years later. Bohmwald, who says she speaks perfect English, was articulate in answering the prosecutor's questions in 2006, and her acknowledgment at that time she understood the prosecutor's immigration warning undermined her statement at the hearing in 2018 that she had no such understanding. (See *People v. Tapia, supra*, 26 Cal.App.5th at p. 953 ["The trial court implicitly found [the defendant's] declaration [that he did not understand the immigration consequences of his plea] not credible, considering the comment by [his counsel]" and "the trial court's advisement."]; *People v. Perez* (2018) 19 Cal.App.5th 818, 829-830 ["the record belies [the defendant's] contention that he did not meaningfully understand the immigration consequences of his plea" because "the superior court explicitly informed [the defendant] that if he were to plead guilty, he would be deported from the United States"].)[10]

---

[10] Citing *In re Resendiz* (2001) 25 Cal.4th 230, Bohmwald argues that "the court's required admonishment is *not* a substitute for counsel's duty to advise regarding adverse immigration consequences." True enough. In *In re Resendiz* the Supreme Court held that an advisement under section 1016.5 did not preclude the petitioner from seeking a writ of habeas corpus on the ground his counsel misadvised him. (*Resendiz,* at

18

Finally, the trial court in 2006 observed Bohmwald affirmed her understanding of the immigration consequences of her plea and found she knowingly and intelligently entered her plea and understood its consequences. Bohmwald does not address this evidence; she relies instead on her testimony and declaration in 2018, which are inconsistent with the rest of the record.[11]

---

pp. 241-242.) But the superior court here did not deny Bohmwald's motion because the prosecutor's admonition under section 1016.5 was sufficient, but because Bohmwald's response in 2006 to the admonitions cast doubt on the credibility of her testimony in 2018 that she was unaware of the immigration consequences of her plea.

[11] Bohmwald argues the superior court erred in failing to make an explicit finding on her attorney's failure to discuss with her the immigration consequences of her plea, which she says is a "required" finding under section 1473.7. In finding Bohmwald failed to meet her burden under section 1473.7, the superior court necessarily found she failed to show "a *prejudicial* error" (*Vivar*, *supra*, 11 Cal.5th at p. 517) that affected her ability to meaningfully understand the immigration consequences of her plea. As discussed, the court denied Bohmwald's motion because the court did not credit Bohmwald's testimony that her attorney did not properly advise her or that she did not meaningfully understand the immigration consequences of her plea, and therefore failed to meet her burden of demonstrating error under section 1473.7. Section 1473.7 does not require more.

C. *The Superior Court Did Not Err in Ruling Bohmwald Failed To Show Prejudice*

As discussed, to show prejudice under section 1473.7 Bohmwald had to demonstrate a "reasonable probability" that, had she understood the immigration consequences of the plea, she would have rejected it. (*Vivar, supra*, 11 Cal.5th at p. 529.) "When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Id.* at pp. 529-530.) "[W]hen a defendant seeks to withdraw a plea based on inadequate advisement of immigration consequences, we have long required the defendant corroborate such assertions with "'objective evidence.'"" (*Id.* at p. 530; see *Lee v. United States* (2017) 582 U.S. ___, ___ [137 S.Ct. 1958, 1967, 198 L.Ed.2d 476] (*Lee*) ["[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies," but "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences"]; *People v. Martinez* (2013) 57 Cal.4th 555, 565 ["It is up to the trial court to determine whether the defendant's assertion is credible, and the court may reject an assertion that is not supported by an explanation or other corroborating circumstances."]; *People v. Lopez, supra*, 66 Cal.App.5th at p. 581, quoting *Lee*, at p. ___ [137 S.Ct. at p. 1967].)

20

Considering the totality of the circumstances here, we conclude Bohmwald failed to show that, had she understood the immigration consequences of her plea in 2006, she would not have accepted the benefits of her plea and pleaded no contest. First, the record does not reflect that avoiding deportation was important to Bohmwald in 2006. The superior court found Bohmwald was not particularly concerned in 2006 with the immigration consequences of a felony conviction, and the court did not believe Bohmwald's statement her "green card" was "of utmost importance." As discussed, we defer to the court's credibility finding based on its observation of Bohmwald's testimony. (See *Vivar*, *supra*, 11 Cal.5th at pp. 527-528.) Bohmwald also continued to enter into plea agreements relatively close in time to her 2006 plea and received similar warnings about adverse immigration consequences before pleading no contest, which further suggested indifference to immigration consequences. (Cf. *id.* at p. 531 [defendant's actions "at or near the time" of his plea corroborated his assertion "he wouldn't have pleaded guilty had he known it would result in his deportation"].) And the record of the 2007 plea proceedings, which occurred a little over a year after her 2006 plea, does not indicate Bohmwald was at all concerned about the immigration advisement she now says would have been a deal-breaker.[12]

Bohmwald's response in 2006 to the prosecutor's admonition that deportation was a certainty also belies her

---

[12] The superior court observed that the 2007 plea form was "something that [was] gone over by [Bohmwald] again, and [her] attorney" and that Bohmwald initialed the box indicating she had discussed each of the statements on the form with her attorney.

21

insistence in 2018 she would have stayed longer in jail to "save" her immigration status. Contrary to Bohmwald's contention that "a section 1016.5 admonition . . . cannot be used to cast doubt on a defendant's credibility on the issue of prejudice in a section 1473.7 claim," the superior court properly considered Bohmwald's response to the prosecutor's admonition.[13] (See *People v. Patterson* (2017) 2 Cal.5th 885, 899 ["In exercising . . . discretion [under section 1018], a trial court may take into consideration the defendant's reaction to the section 1016.5 advisement—for example, whether the defendant acknowledged understanding the advisement and whether he or she expressed concerns about possible deportation consequences or sought additional time to consult with counsel. These considerations . . . may assist courts in evaluating a later claim that the defendant would not have entered the plea had he or she understood the plea would render the defendant deportable."].)[14]

---

[13] Bohmwald argues she did not understand "the *legal* meaning of the words uttered by the prosecutor." Putting aside that this argument is inconsistent with her testimony she did not recall the prosecutor told her the immigration consequences of her plea, Bohmwald nevertheless did not express any hesitation, confusion, lack of understanding, or concern upon hearing the terms "deportation," "denial of naturalization," and "denial of reentry into the United States."

[14] Citing *People v. Rodriguez* (2021) 60 Cal.App.5th 995, Bohmwald states that, "when [a] defendant receives a form that advises him of *certain* adverse immigration consequences, it is not sufficient to overcome the prejudice that results from counsel's deficient immigration advice." But, except for one sentence at the end of the opinion, the court in *Rodriguez* did not address the issue of prejudice. The "critical question" in that case

22

Second, the Supreme Court in *Vivar* emphasized the importance of corroborating objective evidence. (*Vivar, supra,* 11 Cal.5th at p. 530.) Here, however, there was no contemporaneous evidence to corroborate Bohmwald's 2018 statement that she prioritized her immigration status in 2006. (Cf. *Lee, supra,* 582 U.S. at pp. \_\_\_, \_\_\_ [137 S.Ct. at pp. 1963, 1967-1968] [defendant submitted his trial counsel's testimony that "'deportation was the determinative issue in [the defendant's] decision whether to accept the plea,'" which the defendant's responses during the plea colloquy confirmed]; *Vivar, supra,* 11 Cal.5th at pp. 530-531 [defendant submitted his trial counsel's contemporaneous notes, which reflected that the defendant "was indeed concerned about the 'consequences' of his plea," and his "uncounseled letters" to the court a few months after his plea to express how much he valued remaining in the United States]; *Ogunmowo, supra,* 23 Cal.App.5th at pp. 78-79 [defendant presented evidence from his trial counsel that he affirmatively sought advice about immigration consequences before entering his guilty plea, which provided "contemporaneous

_____

was whether the section 1016.5 advisement on the plea form "supported the trial court's finding that [the defendant] 'meaningfully understood the associated adverse immigration consequences' he ultimately faced at sentencing." (*Rodriguez,* at p. 1004.) Because an "unusual sequence of events" led the trial court in that case to sentence the defendant to a lengthier prison term than the term his trial counsel negotiated, "elevating his conviction to an 'aggravated' felony under the federal immigration laws and subjecting him to deportation," the court concluded the defendant did not understand the immigration consequences of his plea. (*Id.* at pp. 999, 1000-1001, 1004-1005.) There were no such unusual circumstances here.

evidence" to support his "assertion he would have rejected the plea deal if his attorney had not misadvised him about the immigration consequences of a conviction"].)

Third, the record shows Bohmwald in fact had other priorities in agreeing to plead no contest. The superior court found she pleaded no contest to obtain her release from custody, which finding was supported by Bohmwald's testimony, in response to the court's question about her priorities in 2006, she "definitely" wanted to get out of jail. Although, as Bohmwald points out, under *Vivar* a defendant may simultaneously seek both to minimize her period of incarceration and to avoid adverse consequences, in *Vivar* the defendant proved he would have "considered his immigration status 'the most important part' of his decision to plead." (*Vivar, supra*, 11 Cal.5th at p. 530; see *Lee, supra*, 582 U.S. at pp. ___, ___ [137 S.Ct. at pp. 1963, 1968].) There was no such evidence here.

Fourth, there was no evidence an immigration-neutral negotiated disposition was possible. (See *Vivar, supra*, 11 Cal.5th at p. 531 [trial counsel's "contemporaneous notes" indicated the prosecution offered a deal in which the defendant could have avoided mandatory deportation].) Neither Bohmwald's attorney, the prosecutor, nor an immigration expert (see *ibid.*) testified Bohmwald had any options or prospects of obtaining a plea deal that did not have immigration consequences. (See *id.* at p. 529 ["the court should consider 'evidence that would have caused the defendant to expect or hope a different bargain would or could have been negotiated'"].) Indeed, as discussed, Bohmwald's successful motion under section 1016.5 to vacate her 2007 plea resulted in a trial on the merits, a conviction, and affirmance on appeal. (*People v. Bohmwald*, *supra*, B300413.)

24

Fifth, because the United States has been Bohmwald's home for most of her life, her ties to this country may have been the one *Vivar* factor that weighed in favor of a finding of prejudice.  But not too strongly.  Unlike the defendants in other cases, Bohmwald did not have any dependents or other obligations that made it imperative for her to remain in the United States in 2006.  (Cf. *Lee*, *supra*, 582 U.S. at p. ___ [137 S.Ct. at p. 1968] [defendant had lived in the United States for nearly three decades, established two businesses, and was the only family member in the United States who could care for his elderly American citizen parents]; *Vivar*, *supra*, 11 Cal.5th at p. 530 [defendant had two children, two grandchildren, and a wife, all of whom were United States citizens]; *People v. Mejia*, *supra*, 36 Cal.App.5th at p. 872 [defendant's wife and infant son lived in the United States as did his mother and six siblings]; *People v. Camacho*, *supra*, 32 Cal.App.5th at p. 1011 [defendant had a spouse and infant son, both of whom were American citizens]; *Ogunmowo*, *supra*, 23 Cal.App.5th at pp. 69, 73, 78 [defendant relocated from Nigeria to the United States and had a partner and four children who were American citizens].)  Conversely, Bohmwald had a meaningful tie to her native country—her mother had moved back to Venezuela two years before her plea in this case.[15]  (Cf. *Lee*, at p. ___ [137 S.Ct. at p. 1968] ["there is no indication that [the defendant] had any ties

---

[15]    It appears Bohmwald forgot she testified at the hearing that her mother had returned to Venezuela when Bohmwald was 17 years old.  Bohmwald argues that, at the time of her 2006 plea, her parents "were in this country," she "had no ties" to Venezuela, and she "would be left to fend for herself."  There is no support in the record for this statement.

25

to South Korea"]; *Vivar*, at p. 530 [the defendant "had virtually no ties to Mexico"]; *Mejia*, at p. 872 [the defendant's "only remaining family tie to Mexico was his father, who passed away just before [he] entered his guilty pleas"].)

Bohmwald argues her 2018 application for naturalization and her prompt efforts to "undo the adverse immigration consequences of her plea" once she learned of those consequences corroborated her assertion of prejudice. Bohmwald's 2018 application is not probative of her mindset in 2006, and the passage of 12 years before she sought to change her immigration status suggests that obtaining United States citizenship was not a priority for her. And Bohmwald's efforts in 2018 to vacate her 2006 and 2007 convictions have little bearing on her priorities in 2006. (See *People v. Martinez, supra*, 57 Cal.4th at p. 564 [defendant's "decision to accept or reject a plea" is ""viewed at the time of the offer""].)

## DISPOSITION

The order denying Bohmwald's motion without prejudice under section 1473.7 to vacate her 2006 conviction is affirmed.


SEGAL, J.


We concur:


PERLUSS, P. J.


McCORMICK, J.*

---

\*     Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.