Filed 05/16/23  P. v. Le CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>PHONG PHUC LE,<br><br>    Defendant and Appellant. | G061159<br><br>(Super. Ct. No. 94CF2789)<br><br>O P I N I O N |

Appeal from a post-judgment order of the Superior Court of Orange County, Terry K. Flynn-Peister, Judge.  Reversed and remanded with directions.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Senior Assistant Attorney General, Collette C. Cavalier and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

William J. Capriola, under appointment of the Court of Appeal, for Defendant and Appellant.

\* \* \*

1

Phong Phuc Le appeals from a post-judgment order denying his motion to vacate his voluntary manslaughter conviction and withdraw his guilty plea pursuant to Penal Code section 1473.7.[1]  Le contends he did not understand the immigration consequences of his plea and conviction.  As discussed below, we conclude Le has shown he did not meaningfully understand the immigration consequences of his guilty plea and suffered prejudice as a result.  Accordingly, we reverse and remand with directions to grant his section 1473.7 motion.

I

FACTUAL AND PROCEDURAL BACKGROUND

A.  *Guilty Plea and Conviction*

On November 28, 1995, an information was filed charging Le with murder (§ 187, subd. (a)) and active participation in a criminal street gang (§ 186.22, subd. (a)), and alleging both crimes were committed for the benefit of, at the direction of, and in association with a criminal street gang (§ 186.22, subd. (b)(1)).  On November 30, 1995, in exchange for dismissal of those charges, Le pleaded guilty to one count of voluntary manslaughter (§ 192, subd. (a)).

In his written plea form, Le wrote the factual basis for his plea was that "[o]n August 6, 1993, I aided and abetted another in the killing of a human being without malice aforethought in Orange County with the intent to kill."  He initialed the box next to the sentence: "I understand that if I am not a citizen of the United States the conviction for the offense charged may have the consequence of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States."  Le signed under the statement that he had "read, understood, and personally initialed each item above and discussed them with my attorney."  His attorney

---

[1]  All further statutory references are to the Penal Code, unless otherwise stated.

2

also signed the plea form, stating he had "explained each of the above rights to the defendant."

Pursuant to the negotiated disposition, the trial court sentenced Le to three years on the manslaughter conviction. It deemed Le had served his time in custody and ordered him to report to parole.

B. *Section 1473.7 Motion*

On January 5, 2022, Le filed a motion to vacate his manslaughter conviction pursuant to section 1473.7. In the motion, he asserted that he did not meaningfully understand the immigration consequences of his guilty plea, and he would never have entered the plea if he had known that it would render him deportable. In a supporting declaration, Le stated he was born on February 7, 1975, in Vietnam. In 1982, when Le was seven years old, he and his entire family came to the United States as refugees. Le attended elementary, middle and high school in Orange County. On August 6, 1993, when Le was 18 years old, he was arrested for an alleged gang murder. "The crime that was the basis for the charges in this case took place in the street, but I was in the church parking lot, parked, and in my vehicle. Because of my past, it was easy to believe that I was involved."

Public defender Brian Ducker was appointed to represent Le in the case. Le stated that on November 30, 1995, he met with Ducker while in custody. Ducker convinced Le to accept a guilty plea to voluntary manslaughter for aiding and abetting, stating "it was a good deal because I had been incarcerated for 'far too long' and if I accepted, I would be released from jail that same day." "I believed that the conviction was unfair as I was simply at the wrong place at the wrong time, but I felt hopeless [because] I had no options and I had already spent a very long time in jail fighting my case." Le stated that Ducker did not ask him whether he was an immigrant and as a result never informed him there would be immigration consequences to his plea.

3

After his conviction, the Department of Homeland Security detained him in November 1997 and placed him in removal proceedings.  On July 28, 1999, an immigration judge ordered Le's removal from the United States, but because Vietnam was not accepting deportees at that time, he was released.  Subsequently, in 2016, he married his wife and in 2018, his daughter was born.  Recently, his father was diagnosed with prostate cancer, and Le became his primary caregiver.

Le stated that "[d]espite having signed plea forms that advised me that I *may* have immigration consequences [because of the guilty plea], it was never clear to me that I *would* since Mr. Ducker never mentioned any immigration consequences to me.  As [a] result, I believed there would be none."  Le asserted:  "If I had known the consequences of my plea, I would have insisted that Mr. Ducker obtain an alternative plea, even if it meant more jail time, because more jail time would have been nothing compared to permanent separation from my family and permanent banishment to a country we fled from.  If I could not obtain a charge that would have prevented my deportation, I would have insisted on taking my chances at trial. . . .  I know my entire family would have supported my decision because they would have known I was fighting for my future in the U.S. and if I was deported to Vietnam my life was in danger."  Le explained: "At the time of my plea in this case, I had so much to lose by my deportation.  I was brought here as a refugee at the age of 7 and was a lawful permanent resident.  All of my family lived in the U.S.  I grew up in the United States and attended schools here and I lacked any ties to my country of . . . birth, Vietnam."

Le's attorney Ducker filed a declaration stating that he did not recall "inquiring or confirming the immigration status of Mr. Le."  He further stated:  "I do not recall whether the immigration consequences of the plea were discussed with Mr. Le prior to advising him to plea guilty to the manslaughter charge."

Respondent did not file a written opposition, but voiced its opposition at the February 4, 2022 hearing on Le's section 1473.7 motion.  The trial court denied the

4

motion without prejudice, finding that "[i]t is not clear from the [submitted] materials that the defendant would have chosen to go to trial had he been aware of the immigration consequences. [¶] The record also seems to indicate that it is highly unlikely [Le] would have been able to negotiate an immigration neutral plea deal at that time that the People would have accepted. [¶] These are extremely serious charges. And looking at the charges, he got a very good negotiated disposition. And the facts, at least on the record, to this Court make it look like while immigration consequences may have been important to him, I do not have any evidence from this that they would have overwhelmed and changed how he acted on this."

## II

### DISCUSSION

A. *Applicable Law*

Section 1473.7 provides in relevant parts that "[a] person who is no longer in criminal custody may file a motion to vacate a conviction or sentence" "due to prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a conviction or sentence." (§ 1473.7, subd. (a)(1).) "A defendant requesting relief under section 1473.7 bears the burden of establishing by a preponderance of evidence that there is a reasonable probability that he or she would not have entered into the plea agreement if he or she had meaningfully understood the associated adverse immigration consequences." (*People v. Rodriguez* (2021) 60 Cal.App.5th 995, 1003.) Stated differently, "[t]he defendant must first show that he did not meaningfully understand the immigration consequences of his plea. Next, the defendant must show that his misunderstanding constituted prejudicial error." (*People v. Espinoza* (2023) 14 Cal.5th 311, 319 (*Espinoza*).)

5

We independently review an order denying a section 1473.7 motion. (*People v. Vivar* (2021) 11 Cal.5th 510, 527 (*Vivar*).) "'[U]nder independent review, an appellate court exercises its independent judgment to determine whether the facts satisfy the rule of law.' [Citation.]" (*Id.* at p. 527.) "In section 1473.7 proceedings, appellate courts should . . . give particular deference to factual findings based on the trial court's personal observations of witnesses. [Citation.] Where, as here, the facts derive entirely from written declarations and other documents, however, there is no reason to conclude the trial court has the same special purchase on the question at issue; as a practical matter, '[t]he trial court and this court are in the same position in interpreting written declarations' when reviewing a cold record in a section 1473.7 proceeding. [Citation.]." (*Id.* at pp. 527-528.)

B. *Appellant Has Shown "Error" Under Section 1473.7*

Here, the record establishes that Le did not meaningfully understand or knowingly accept the immigration consequences of his plea. As Le stated in his declaration, although he was advised that there *may* be immigration consequences, his attorney never advised him that there *would* be immigration consequences. As a result, he believed there would be no immigration consequences. Le further stated that had he known of the adverse immigration consequences of the plea, he would have insisted on negotiating an alternative plea or taking his chances at trial. In ruling on the motion, the trial court made no express or implied credibility determination on this point. Accordingly, Le established his own "error" in meaningfully understanding or knowingly accepting the potential adverse immigration consequences of his manslaughter conviction. (See *People v. Mejia* (2019) 36 Cal.App.5th 859, 872 (*Mejia*) [defendant plainly established "error" under section 1473.7, subdivision (a), where he said that "he would have never pleaded guilty had he known and understood 'that this would harm me in the future.'"]; *Espinoza*, *supra*, 14 Cal.5th at p. 320 [concluding that defendant established he did not meaningfully understand immigration consequences of plea

6

because "[a]lthough the trial court provided a general advisement under section 1016.5 that his conviction may have immigration consequences, [defendant's] attorney never advised him that pleading no contest to the charges at issue would result in his deportation."].)

Respondent argues that the plea form, which advised Le that he may be deported as a result of his plea and was initialed by Le and signed by his attorney, established Le was informed and understood the immigration consequences of his plea. However, a generic advisement that a defendant may suffer immigration consequences is insufficient alone to establish that the defendant meaningfully understood the immigration consequences of a plea. (See, e.g., *Espinoza*, *supra*, 14 Cal.5th at p. 320 [concluding defendant established he did not meaningfully understand the immigration consequences of his plea despite being advised that his conviction may have immigration consequences]; *People v. Patterson* (2017) 2 Cal.5th 885, 889 ["[R]eceipt of the standard statutory advisement that a criminal conviction 'may' have adverse immigration consequences" does not bar "a noncitizen defendant from seeking to withdraw a guilty plea on that basis."]; *People v. Ruiz* (2020) 49 Cal.App.5th 1061, 1065 [concluding that "the words 'may have' in a section 1016.5 immigration advisement are not an adequate immigration advisement for defendants charged with serious controlled substance offenses"].)

Respondent's reliance on *People v. Abdelsalam* (2022) 73 Cal.App.5th 654 (*Abdelsalam*) is misplaced. There, "[d]uring the taking of the plea, appellant was told orally and in writing that he will be deported. Not that he 'might' be deported, or that he 'could' be deported." (*Id.* at p. 663.) In contrast, here, Le was advised only that he "may" be deported. *Abdelsalam* is thus distinguishable.

C. *Appellant Has Shown Error Was Prejudicial Under Section 1473.7*

Having established "error" under section 1473.7, we turn to whether Le has demonstrated the error was prejudicial. "[S]howing prejudicial error under section

7

1473.7, subdivision (a)(1) means demonstrating a reasonable probability that the defendant would have rejected the plea if the defendant had correctly understood its actual or potential immigration consequences." (*Vivar*, *supra*, 11 Cal.5th at p. 529.) "A 'reasonable probability' 'does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*.' [Citation.]" (*People v. Hardy* (2021) 65 Cal.App.5th 312, 329.) "When courts assess whether a petitioner has shown that reasonable probability, they consider the totality of the circumstances. [Citation.] Factors particularly relevant to this inquiry include the defendant's ties to the United States, the importance the defendant placed on avoiding deportation, the defendant's priorities in seeking a plea bargain, and whether the defendant had reason to believe an immigration-neutral negotiated disposition was possible." (*Vivar*, *supra*, 11 Cal.5th at pp. 529-530.) "Also relevant are the defendant's probability of obtaining a more favorable outcome if he had rejected the plea, as well as the difference between the bargained-for term and the likely term if he were convicted at trial. [Citation.] These factors are not exhaustive, and no single type of evidence is a prerequisite to relief." (*Espinoza*, *supra*, 14 Cal.5th at p. 321.)

Here, in finding it not reasonably probable that Le would have rejected the plea had he known of the immigration consequences, the trial court focused on the probability of obtaining a different immigration-neutral negotiated disposition and the very favorable terms of the negotiated disposition in this case. However, those facts are not dispositive. Indeed, as the United States Supreme Court has stated, where avoiding deportation was *the* determinative factor for a defendant, there is a reasonable probability that such a defendant "would have rejected any plea leading to deportation—even if it shaved off prison time—in favor of throwing a 'Hail Mary' at trial." (*Lee v. U.S.* (2017) __ U.S. __, 137 S.Ct. 1598, 1967.)

8

Le provides a compelling case that avoiding deportation to Vietnam was of paramount concern to him at the time of the plea. Le and his entire family fled Vietnam as *refugees*. As Le stated in his declaration, his deportation back to Vietnam would have placed him in *danger*. (See *Espinoza*, *supra*, 14 Cal.5th at p. 322 ["a defendant's declaration is one form of objective evidence relevant to a prejudicial error inquiry"].)

Le's strong community ties also provide compelling evidence in support of a finding of prejudicial error. Le came to California when he was seven years old, and became a lawful permanent resident. His entire family lived in the United States. He attended elementary, middle and high school in Orange County. He lacked any ties to Vietnam. (See *People v. Lopez* (2022) 83 Cal.App.5th 698, 708 [prejudice established where the defendant moved to the United States at the age of 13, his entire family lived here, and he lacked meaningful ties to his country of origin]; *People v. Alatorre* (2021) 70 Cal.App.5th 747, 771 [prejudice established where the defendant had lived in the United States since he was a preschooler, his entire family lived here, and he eventually married and raised children here]; *People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324-325 [prejudice established where the defendant lived in the United States for decades since infancy, her immediate family and children lived here, she attended school here, and she lacked meaningful ties to her birth country]; *Mejia*, *supra*, 36 Cal.App.5th at p. 872 [compelling evidence of prejudice where the defendant lived in the United States since he was 14 years old, and his wife and child lived here, as well as his mother and siblings]; *People v. Ogunmowo* (2018) 23 Cal.App.5th 67, 73 [prejudice established where defendant "moved [his] life 7,700 miles across the globe" nearly a decade before, and "was not about to accept the possibility of deportation or inability to maintain [his] immigration status to be in the United States"]; *People v. Camacho* (2019) 32 Cal.App.5th 998, 1011 [prejudice established because the defendant was "brought to the United States over 30 years ago at the age of two, has never left this country, and attended elementary, middle, and high school in Los Angeles County. . . . [and] is, and at

9

the time of his plea was, married to a United States citizen with an American citizen son, and now also an American citizen daughter"].)

After Le accepted the plea and was released, he married and had a daughter. He worked numerous jobs and attended church in Orange County. He became the sole caregiver for his elder father, who was diagnosed with prostate cancer. "These facts lend credence to [Le's] assertion that his community ties were important to him at the time of his plea." (*Espinoza*, *supra*, 14 Cal.5th at p. 322 [finding that post-release history supported prejudice because "[a]fter Espinoza accepted the plea and served jail time, he returned home to care for his family and community. He became the caregiver for his elderly parents who suffer from severe medical conditions. He ran his own business to provide for his family. He volunteered, went to church, and took part in numerous community organizations."].)

Applying our independent judgment, we conclude that, based on the totality of the circumstances, it is reasonably probable defendant would have rejected the plea had he correctly understood its actual immigration consequences. Although Le received a very favorable disposition, his strong community ties and the risk of danger if deported to Vietnam in 1995 establish that there is a reasonable chance he would have rejected the plea and risked significantly more jail time to avoid mandatory deportation. As Le stated, "more jail time would have been nothing compared to permanent separation from my family and permanent banishment to a country we fled from." Le has carried his burden and established prejudice. Accordingly, he is entitled to relief. (See *People v. Camacho*, *supra*, 32 Cal.App.5th at p. 1012, ["The appropriate remedy is to direct the trial court to grant the motion"]; accord, *Mejia*, *supra*, 36 Cal.App.5th at p. 873.)

10

III

DISPOSITION

The order is reversed and the matter is remanded to the trial court to allow Le to withdraw his 1995 guilty plea and vacate his manslaughter conviction.


DELANEY, J.

WE CONCUR:


GOETHALS, ACTING P. J.


SANCHEZ, J.

11